Paul S. Padda
NV Bar No. 10417
PAUL PADDA LAW, PLLC
4560 South Decatur Blvd., Suite 300
Las Vegas, NV 89103
Tel: (702) 366- 1888
psp@paulpaddalaw.com

Brock J. Specht, MN Bar No. 0388343*
bspecht@nka.com
Matthew H. Morgan, MN Bar No. 0304657*
morgan@nka.com
NICHOLS KASTER, PLLP
4700 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878

* LR IA 11-2 petition approved

ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASS

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Danny Wanek, Juan Duarte, and Rick Ruberton, as representatives of a class of similarly situated persons, and on behalf of the Caesars Entertainment Corporation Savings & Retirement Plan,<br><br>Plaintiffs,<br><br>v.<br><br>Russell Investments Trust Company, Caesars Holdings Inc., the Plan Investment Committee, and the 401(k) Plan Committee,<br><br>Defendants. | **Case No. 2:21-cv-00961-CDS-BNW**<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

# TABLE OF CONTENTS


MOTION ........ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

INTRODUCTION ........ 1

BACKGROUND ........ 2

I. Litigation History and Settlement Negotiations ........ 2

A. Plaintiffs' Allegations ........ 2

B. Motions to Dismiss, Discovery, and Summary Judgment ........ 3

C. Trial Preparations and Settlement ........ 3

II. Overview of Settlement Terms ........ 4

A. The Settlement Class ........ 4

B. Monetary Relief ........ 4

C. Release of Claims ........ 5

D. Settlement Notice and Administration ........ 5

E. Attorneys' Fees and Administrative Expenses ........ 6

F. Independent Fiduciary Review ........ 6

ARGUMENT ........ 6

I. Standard of Review ........ 6

II. The Settlement Satisfies the Standard for Preliminary Approval ........ 8

A. The Settlement is the Product of Informed, Arms-Length Negotiations by Experienced Counsel ........ 8

B. The Settlement Provides Adequate Relief to the Class ........ 9

1. Costs, Risks, and Delay of Trial and Appeal ........ 9

2. Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class-member Claims ........ 10

3. Terms of any Proposed Award of Attorney's Fees, Including Timing of Payment ........ 11

C. The Court Should Preliminarily Approve the Bar Order ........ 12

III. The Settlement Notice Plan is Reasonable and Should be Approved .......... 14
IV. Class Certification Should be Reaffirmed for Settlement Purposes .......... 15
A. The Class Satisfies Rule 23(a) .......... 15
1. Numerosity .......... 15
2. Commonality .......... 16
3. Typicality .......... 17
4. Adequacy .......... 18
B. The Proposed Class Satisfies Rule 23(b)(1) .......... 19
1. Rule 23(b)(1)(A) .......... 19
2. Rule 23(b)(1)(B) .......... 20
V. Appointment of Settlement Administrator and Fairness Hearing .......... 21
CONCLUSION .......... 21

# TABLE OF AUTHORITIES

**Cases**

*Acuna v. So. Nev. T.B.A. Supply Co.*,
324 F.R.D. 367 (D. Nev. 2018)........ 7

*A.F. ex rel. Legaard v. Providence Health Plan*,
300 F.R.D. 474 (D. Or. 2013)........ 16

*Andersen v. Briad Rest. Grp., LLC*,
No. 14-cv-00786, 2022 WL 181262 (D. Nev. Jan. 19, 2022)........ 7, 8

*Andrews v. Wilson Elec. Serv. Corp.*,
No. CV-24-00995, 2025 WL 2180656 (D. Ariz. July 29, 2025)........ 16

*Aquino v. 99 Cents Only Stores LLC*,
No. 22-cv-01966, 2024 WL 7009745, at *5 (C.D. Cal. Jan. 2, 2024)........ 10

*Baird v. Blackrock Inst. Tr. Co., N.A.*,
No. 17-cv-01892, 2020 WL 7389772 (N.D. Cal. Feb. 11, 2020)........ 18

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011)........ 11

*Brinkmann v. ABM Onsite Servs.–W., Inc.*,
No. 17-cv-275-SI, 2021 WL 3932040 (D. Or. Sept. 2, 2021)........ 12

*Briseño v. Henderson*,
998 F.3d 1014 (9th Cir. 2021)........ 7, 8, 9, 11

*In re Calif. Pizza Kitchen Data Breach Litig.*,
129 F.4th 667 (9th Cir. 2025)........ 7-8

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004)........ 15

*Coppel v. SeaWorld Parks & Ent., Inc.*,
347 F.R.D. 338 (S.D. Cal. 2024)........ 17

*Cottle v. Plaid, Inc.*,
340 F.R.D. 356 (N.D. Cal. Nov. 19, 2021)........ 16

*Franklin v. Kaypro Corp.*,
884 F.2d 1222 (9th Cir. 1989)........................................................................ 12, 13

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)........................................................................................ 17

*Grabek v. Northrop Grumman Corp.*,
346 F. App'x 151 (9th Cir. 2009)..................................................................... 20

*Haralson v. U.S. Aviation Serv. Corp.*,
383 F. Supp. 3d 959 (N.D. Cal. 2019)................................................................ 7

*Harris v. U.S. Physical Therapy, Inc.*,
2012 WL 4181367 (D. Nev. Sept. 18, 2012)...................................................... 14

*Harris v. U.S. Physical Therapy, Inc.*,
No. 10-cv-01508, 2012 WL 6900931 (D. Nev. Dec. 26, 2012)............................ 7

*In re Heritage Bond Litig.*,
546 F.3d 667 (9th Cir. 2008)............................................................................ 12

*Howell v. JBI, Inc.*,
298 F.R.D. 649 (D. Nev. 2014)................................................................ 7, 8, 11

*Hunichen v. Atonomi LLC*,
2021 WL 5854964 (W.D. Wash. Nov. 12, 2021)............................................... 12

*Iannone v. AutoZone, Inc.*,
2024 WL 6978549 (W.D. Tenn. Aug. 21, 2024)................................................ 13

*Kanawi v. Bechtel Corp.*,
254 F.R.D. 102 (N.D. Cal. 2008)............................................... 16, 17, 19, 20

*Kelly v. Aramark Serv., Inc.*,
815 F. Supp. 3d 1043 (N.D. Cal. Dec. 23, 2025)................................................ 8

*Krueger v. Ameriprise Fin., Inc.*,
304 F.R.D. 559 (D. Minn. 2014)....................................................................... 19

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010)........................................................................ 6

*Martinez v. Realogy Corp.*,
2013 WL 5883618 (D. Nev. Oct. 30, 2013) .......... 14, 15

*In re Masters Mates & Pilots Pension Plan & IRAP Litig.*,
957 F.2d 1020 (2d Cir. 1992) .......... 13

*McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Tr.*,
268 F.R.D. 670 (W.D. Wash. 2010) .......... 16

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .......... 10

*Moreno v. Deutsche Bank Americas Holding Corp.*,
No. 15 Civ. 9936, 2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017) .......... 18, 20

*Munro v. Univ. of S. Cal.*,
No. 16-cv-06191, 2019 WL 7842551 (C.D. Cal. Dec. 20, 2019) .......... 16

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .......... 9

*In re Northrop Grumman Corp. ERISA Litig.*,
No. CV 06-06213, 2011 WL 3505264 (C.D. Cal. Mar. 29, 2011) .......... 17, 19, 20

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) .......... 10

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) .......... 19, 20

*Roes, 1–2 v. SFBSC Mgmt., LLC*,
944 F.3d 1035 (9th Cir. 2019) .......... 12

*Sadowska v. Volkswagen Grp. of Am., Inc.*,
No. CV 11-00665, 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) .......... 15

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) .......... 19

*Small v. Allianz Life Ins. Co. of N. Am.*,
122 F.4th 1182 (9th Cir. 2024) .......... 17, 18

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
No. 15-cv-1614, 2017 WL 2655678 (C.D. Cal. June 15, 2017) ................................ 17, 20

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ................................................................................. 15, 16

*Williams v. PillPack LLC*,
No. 19-cv-05282, 2024 WL 4574563 (W.D. Wa. Sept. 17, 2024) ........................ 8, 10, 11

*In re WorldCom, Inc. ERISA Litig.*,
339 F. Supp. 2d 561 (S.D.N.Y. 2004) ................................................................ 13

**Rules, Regulations, and Statutes**

Fed. R. Civ. P. 23 ............................................................................................ *passim*

28 U.S.C. § 1715 ............................................................................................... 15

29 U.S.C. § 1104 ............................................................................................... 19

29 U.S.C. § 1106 ................................................................................................. 6

29 U.S.C. § 1109(a) ........................................................................................... 18

29 U.S.C. § 1132 ................................................................................... 5, 18, 19, 20

**Other Authorities**

Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75,632 (Dec. 31, 2003) ....................... 6

**MOTION**

Plaintiffs Danny Wanek, Juan Duarte, and Rick Ruberton, as representatives of a class of similarly situated persons, and on behalf of the Caesars Entertainment Corporation Savings & Retirement Plan ("Plaintiffs") respectfully move the Court to: (1) preliminary approve the Class Action Settlement Agreement in the above-referenced matter; (2) approve the proposed Settlement Notices and authorize distribution of the Notices to the Settlement Class; (3) schedule a final approval hearing; and (4) enter the Accompanying Preliminary Approval Order.

This motion is made based on the accompanying Memorandum of Points and Authorities, the Declaration of Brock J. Specht in support of this motion, the exhibits attached thereto including the Settlement Agreement attached as Exhibit 1, the Court's prior rulings, and such other matters as may be presented to the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiffs are pleased to report that they have reached a Class Action Settlement Agreement with defendant Russell Investments Trust Company ("Russell"), which resolves Plaintiffs' class action claims under the Employee Retirement Income Security Act ("ERISA").[1] Under the terms of the Settlement, $14,800,000 will be paid into a common fund for the benefit of the Settlement Class in exchange for dismissal of the claims against Russell and a release of claims, as described below. The Settlement resolves the Class's claims against Russell, and with the claims previously asserted against the Caesars defendants having been resolved by the Court's entry of summary judgment and final judgment in their favor, the Settlement, if finally approved, would allow for the dismissal of this action in its entirety.

The $14,800,000 recovery represents approximately 15%–36% of Plaintiffs' estimated damages, which Russell disputes, depending on which damages model is applied. Declaration of Brock J. Specht in Support of Plaintiffs' Motion for Preliminary Approval of Class Action

---

[1] A copy of the Class Action Settlement Agreement (hereinafter the "Settlement" or "Settlement Agreement") is attached as Exhibit 1 to the Declaration of Brock J. Specht. Unless otherwise defined herein, all capitalized terms have the meanings assigned to them in the Settlement Agreement.

Settlement ("Specht Decl.") ¶ 3. This is an excellent result for the Settlement Class, and the Settlement falls well within the range of possible approval. The proposed Settlement was the product of hard-fought litigation and was negotiated by counsel experienced in 401(k) plan litigation under ERISA. Before reaching the Settlement, the parties vigorously litigated this case for several years and were prepared to proceed to trial, if necessary. The Settlement provides for significant monetary relief to the Settlement Class while avoiding the additional cost, delay, and uncertainty of trial. Additionally, the class release is narrowly tailored to the type of claims that were asserted under ERISA and the factual predicate for those claims. Weighed against the risks and costs of further litigation and the range of possible outcomes, the Settlement easily satisfies the standard for preliminary approval under Rule 23(e).

# BACKGROUND

## I. Litigation History and Settlement Negotiations

### A. Plaintiffs' Allegations

Plaintiffs filed this action on May 19, 2021. ECF No. 1. The operative Fifth Amended Complaint alleged that Russell, after being appointed the outsourced fiduciary for the Caesars Entertainment Corporation Savings & Retirement Plan (the "Plan") in 2017, engaged in self-dealing by using its authority over the Plan's investment menu to replace existing investment options with Russell-affiliated funds. ECF No. 175, ¶ 1. Plaintiffs alleged that the replacement funds were inferior to the Plan's original investments and that the transaction primarily benefited Russell by directing $1.4 billion in Plan assets into proprietary funds that were experiencing significant investor redemptions, while harming participants through inferior investment performance. *Id.* Based on these allegations, Plaintiffs asserted claims against Russell for breach of the fiduciary duties of loyalty and prudence under ERISA (Count I). *Id.* at ¶¶ 73–79. Additionally, Plaintiffs asserted claims against the Plan sponsor, Caesars Holdings Inc., and various committees affiliated with the Plan sponsor (the "Non-Settling Defendants") for failure to monitor (Count II). *Id.* at ¶¶ 80–87.

Russell denied Plaintiffs' allegations and has at all times maintained that it acted prudently and in the best interests of the Plan and its participants, while also maintaining several additional

defenses to Plaintiffs claims. *See generally* ECF No. 176. Russell continues to deny all liability and wrongdoing, and the Settlement by its terms is not an admission or concession by Russell of any fault or liability. Settlement ¶¶ 10.1–10.2.

**B. Motions to Dismiss, Discovery, and Summary Judgment**

This case was intensely litigated from the start. Both Russell and Caesars filed motions to dismiss, ECF Nos. 65, 66, which Plaintiffs opposed, ECF Nos. 72, 73. The Court denied Russell's motion and denied in part and granted in part Caesars' motion. ECF No. 109. Following the Court's order on the motions to dismiss, the parties engaged in extensive discovery for more than 18 months. Specht Decl. ¶ 16. This included the production of over 350,000 pages of documents, the depositions of eleven fact witnesses, the exchange of ten expert reports, and the depositions of six expert witnesses. *Id.* While discovery was ongoing, Plaintiffs moved for class certification under Rule 23, ECF No. 187, to which both Caesars and Russell ultimately stipulated after Plaintiffs filed their motion, ECF No. 192. The Court accepted the parties' stipulation and certified the class on August 29, 2024. ECF No. 195.

Following the close of discovery, both Caesars and Russell moved for summary judgment. ECF Nos. 198, 200. Plaintiffs opposed both motions. ECF Nos. 205, 207. The Court heard argument on the motions on June 25, 2025, ECF No. 230, and on September 25, 2025, the Court issued an order granting Caesars' motion for summary judgment and denying Russell's motion for summary judgment, ECF No. 241; *see also* ECF Nos. 269, 270 (entering final judgment for Caesars).

**C. Trial Preparations and Settlement**

After the Court entered its order denying Russell's motion for summary judgment, Plaintiffs and Russell prepared for a trial of this matter. This included submission of a joint final Pretrial Order and an amended joint final Pretrial order, both of which included trial witness lists, exhibit lists, objections, and deposition designations, among other things. ECF No. 250, 252. While both sides are represented by experienced trial counsel who were prepared to see the case to verdict, both sides also recognized the potential benefits of a negotiated resolution that would avoid the expense, delay, and risks of further litigation. Accordingly, during the course of

preparing for trial, Plaintiffs and Russell engaged in extended, arms-length settlement negotiations, which resulted in the proposed Settlement now before the Court. Specht Decl. ¶ 18.

## II. Overview of Settlement Terms

### A. The Settlement Class

The Settlement applies to the following Settlement Class:

> All participants and beneficiaries of the Caesars Entertainment Corporation Savings & Retirement Plan at any time from August 1, 2017 through December 17, 2021, excluding any employees of Caesars with responsibility for the Plan's investment or administrative functions.

Settlement ¶ 1.49. This class was certified by the Court under Fed. R. Civ. P. 23(b)(1) on August 29, 2024. ECF No. 195.

### B. Monetary Relief

Under the Settlement, Russell or its insurers will contribute a Gross Settlement Amount of $14,800,000 to a Qualified Settlement Fund. Settlement ¶ 4.2. After accounting for any Attorneys' Fees and Costs paid to Class Counsel, any Service Awards authorized by the Court, and Administrative Expenses, the Net Settlement Amount will be distributed to eligible Class Members in accordance with the Plan of Allocation. Settlement ¶ 1.28. The Plan of Allocation provides an equitable pro rata allocation of the Net Settlement Amount based on the extent of each Class Member's average quarterly Plan balance during the Class Period. Settlement ¶ 5.1. Specifically, the Settlement Administrator shall determine an Average Settlement Score, defined as follows:

> Each Participant Class Member's and Former Participant Class Member's average, aggregate Plan balance at the end of each quarter for the period from August 1, 2017, through December 17, 2021.[2]

Settlement ¶ 5.1. The Net Settlement Amount will then be distributed to Class Members *pro rata* based on their Average Settlement Score compared to the sum of all Participant Class Members' and Former Participant Class Members' Average Settlement Scores. Settlement ¶ 5.1.

---

[2] Mathematically stated, the Average Settlement Score shall be calculated as follows: (Q3 2017 Plan balance * (61/92)) + (Q4 2017 Plan balance) + (Q1 2018 Plan balance) + (Q2 2018 Plan balance) + (Q3 2018 Plan balance) + (Q4 2018 Plan balance) + (Q1 2019 Plan balance) + (Q2 2019 Plan balance) + (Q3 2019 Plan balance) + (Q4 2019 Plan balance) + (Q1 2020 Plan balance) + (Q2 2020 Plan balance) + (Q3 2020 Plan balance) + (Q4 2020 Plan balance) + (Q1 2021 Plan balance) + (Q2 2021 Plan balance) + (Q3 2021 Plan balance) + (Q4 2021 Plan balance * (77/92)) *divided by* 17.5 quarters during the Class Period.

### C. Release of Claims

In exchange for the relief provided by the Settlement, the Settlement Class will release Russell and affiliated persons and entities ("Released Parties") from all claims:

- That were asserted in the Action against Russell, or could have been asserted against Russell or any of the other Released Parties, based on or arising from any of the allegations, acts, omissions, facts, events, or transactions asserted in the Action, whether or not pleaded in the Complaints; or

- That would be barred by res judicata based on entry by the Court of the Final Approval Order; or

- That arise from the direction to calculate, the calculation of, and/or the method or manner of the allocation of the Net Settlement Amount pursuant to the Plan of Allocation, or from the Independent Fiduciary's approval of the Settlement Agreement.

Settlement ¶ 1.32. The release is limited to claims "with respect to the Plan," and it expressly excludes (i) claims to enforce the Settlement Agreement, (ii) any individual claim for vested benefits under ERISA § 502(a)(1)(B) not based on conduct described in the release, and (iii) the Class's claims against Caesars, which are not affected by the Settlement. Settlement ¶¶ 1.32, 7.1(c), 7.5.

### D. Settlement Notice and Administration

The Settlement provides for direct notice of the settlement to Class Members. Class Members will receive notice via electronic means where possible, and via U.S. mail where no valid email address is available. Settlement ¶ 3.2(b). The Settlement Notice provides information to the Settlement Class regarding, among other things: (1) the nature of the claims asserted in the Action; (2) the scope of the Settlement Class; (3) the terms of the Settlement Agreement; (4) Settlement Class Members' right to object to the Settlement and the deadline for doing so and the rights of the Settling Parties to discovery concerning such objections; (5) the Settlement Class's release; (6) the identity of Class Counsel and the amount of compensation they will seek in connection with the Settlement; (7) the date, time, and location of the Fairness Hearing; and (8) Settlement Class Members' right to appear at the Fairness Hearing. Settlement, Exhibits 1–2; *see also* Settlement ¶ 3.

The Settlement Administrator will also establish a Settlement Website on which it will post

the Settlement Agreement, Settlement Notice, and relevant case documents. Settlement ¶ 3.3. The Settlement Website will also include a toll-free telephone number and mailing address through which Settlement Class Members may contact the Settlement Administrator directly. Settlement ¶ 3.3.

**E. Attorneys' Fees and Administrative Expenses**

The Settlement requires that Class Counsel file their Motion for Attorneys' Fees and Costs no later than 14 calendar days before the deadline set in the Preliminary Approval Order for objections to the proposed Settlement. Settlement ¶ 6.1. Under the Settlement, the requested fees may not exceed one-third of the Gross Settlement Amount, in addition to the reasonable costs and expenses advanced by Class Counsel during litigation. Settlement ¶ 6.1. The Settlement also provides for the payment of Administrative Expenses related to the Settlement, and for Named Plaintiff Service Awards of up to $20,000 for the three Class Representatives. Settlement ¶ 6.2

**F. Independent Fiduciary Review**

As required under ERISA, the Settling Parties will seek the selection and retention of an independent fiduciary, selected by a current Plan fiduciary, to review the Settlement on behalf of the Plan. Settlement ¶¶ 1.26, 2.2. Such review is necessary because an ERISA plan's grant of a litigation release to a party in interest is a prohibited transaction under ERISA § 406, 29 U.S.C. § 1106, which the Department of Labor's Prohibited Transaction Exemption 2003-39 permits only if an independent fiduciary approves the settlement and determines the Plan received fair value for the release. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010); PTE 2003-39, 68 Fed. Reg. 75,632 (Dec. 31, 2003). The parties will provide the independent fiduciary with sufficient information to support the independent fiduciary's review and evaluation. Settlement ¶ 2.2(c). The independent fiduciary will issue its report at least 30 days prior to the fairness hearing so the Court can consider the report in determining whether to grant final approval of the Settlement. Settlement ¶ 2.2(b).

## ARGUMENT

**I. Standard of Review**

"The Ninth Circuit maintains a strong judicial policy that favors the settlement of class

actions." *Haralson v. U.S. Aviation Serv. Corp.*, 383 F. Supp. 3d 959, 966 (N.D. Cal. 2019) (quotation omitted); *accord Howell v. JBI, Inc.*, 298 F.R.D. 649, 653–54 (D. Nev. 2014) ("a strong judicial policy favors settlement of class actions"); *Andersen v. Briad Rest. Grp., LLC*, No. 14-cv-00786, 2022 WL 181262, at *2 (D. Nev. Jan. 19, 2022) (same). Even so, Rule 23(e) imposes upon district courts "an independent obligation to ensure that any class settlement is 'fair, reasonable, and adequate,' accounting for the interests of absent class members." *Briseño v. Henderson*, 998 F.3d 1014, 1022 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)). A district court's decision to approve a class action settlement, and its award of fees and costs to class counsel, is reviewed for an abuse of discretion. *Briseño*, 998 F.3d at 1022.

District courts apply a two-step analysis in assessing class action settlements. *Haralson*, 383 F. Supp. 3d at 965–66; *see also Acuna v. So. Nev. T.B.A. Supply Co.*, 324 F.R.D. 367, 379 (D. Nev. 2018) (describing the two-stage preliminary-then-final approval process); *Harris v. U.S. Physical Therapy, Inc.*, No. 10-cv-01508, 2012 WL 6900931, at *4–5 (D. Nev. Dec. 26, 2012). First, the parties must show that the court will likely be able to (1) approve the settlement under Rule 23(e)(2) and (2) certify the proposed class for purposes of judgment on the settlement. Fed. R. Civ. P. 23(e)(1)(B). Second, after providing notice to the class, the court holds a fairness hearing under Rule 23(e)(2) to determine whether the settlement agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Andersen*, 2022 WL 181262, at *32 (settlement may be approved only after a fairness hearing and a determination that "the settlement taken as a whole is fair, reasonable, and adequate"). In making this determination, courts consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D); *In re Calif. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674

(9th Cir. 2025). The 2018 amendments incorporated the key judicially created factors directly into the Rule; as the Ninth Circuit has explained, "[t]he key *Hanlon* factors are now baked into the text of Rule 23(e), and the remaining ones can still be considered for Rule 23(e)(2) analysis." *In re Calif. Pizza Kitchen*, 129 F.4th at 674. In applying these factors, the Court must also "ensure that the settlement is not the product of collusion among the negotiating parties." *Briseño*, 998 F.3d at 1023 (quotation omitted). Courts in this District apply these same considerations, weighing the settlement "taken as a whole" against the traditional fairness factors. *See Howell*, 298 F.R.D. at 656; *Andersen*, 2022 WL 181262, at *3.

## II. The Settlement Satisfies the Standard for Preliminary Approval

### A. The Settlement is the Product of Informed, Arms-Length Negotiations by Experienced Counsel

"To determine whether class counsel and class representatives have adequately represented the class, courts consider the competence of counsel and the class representatives' participation in prosecuting the case." *Kelly v. Aramark Serv., Inc.*, 815 F. Supp. 3d 1043, 1051 (N.D. Cal. Dec. 23, 2025). And "[w]here the proposed settlement is preceded by a lengthy period of adversarial litigation involving substantial discovery, a court is likely to conclude that settlement negotiations occurred at arms-length." *Williams v. PillPack LLC*, No. 19-cv-05282, 2024 WL 4574563, at *5 (W.D. Wa. Sept. 17, 2024) (quotation omitted).

Here, Plaintiffs were represented by experienced and competent counsel, with a proven track record of success in ERISA litigation and other class action litigation. Specht Decl. ¶¶ 6–14. As this Court observed in its prior order on class certification, "Plaintiffs . . . have retained competent and experienced class counsel who are adequate to represent the class (*i.e.*, Nichols Kaster, PLLP and Paul Padda Law, PLLC)." ECF No. 195; *see also Williams*, 2024 WL 4574563, at *5 (noting that it had previously found class counsel adequate under Rule 23(a)(4) and concluding that adequate representation was met because Rules 23(a)(4) and 23(e)(2)(A) require similar inquiries). And class counsel have vigorously represented the interests of the Plaintiffs and the class in this matter. The parties had completed both fact and expert discovery, had the benefit of the Court's ruling on dispositive motions, and were in the process of preparing for trial. In

addition, class representatives Danny Wanek, Juan Duarte, and Rick Ruberton have been active participants in every stage of this litigation. Specht Decl. ¶ 19. They assisted with Class Counsel's investigation, participated in fact discovery, stayed informed on developments in the lawsuit, were prepared to testify at trial, and consulted with Class Counsel in evaluating and approving the terms of the Settlement. *Id.* Thus, the parties' positions were well-informed at the time of settlement, and the agreement is the product of informed, arms-length negotiations by experienced counsel.

**B. The Settlement Provides Adequate Relief to the Class**

Under Rule 23(e), courts consider the following factors in determining whether a settlement is fair, reasonable and adequate:

> (1) the costs, risks, and delay of trial and appeal;
> (2) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (3) the terms of any proposed award of attorney's fees, including timing of payment; and
> (4) any agreement required to be identified under Rule 23(e)(3).

*Briseño*, 998 F.3d at 1023 (quoting Fed. R. Civ. P. 23(e)(2)(C)). Rule 23(e)(2)(D) then requires courts to determine whether "the proposal treats class members equitably relative to each other."

**1. Costs, Risks, and Delay of Trial and Appeal**

Here, although Plaintiffs are confident in the strength of their case and recognize that they potentially could have realized a greater recovery at trial, they also recognize the inherent risks in continuing litigation. Indeed, further litigating the matter to trial and through potential appeal would be complex, costly, time-consuming, and would substantially delay any recovery for the class. *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." (quotation omitted)). And in any trial, no matter how strong the claims, success is not guaranteed and the risk of zero recovery is real.

Risks were present here. Russell has vigorously contested liability and damages throughout this litigation and was prepared to present substantial defenses at trial. Among other things, Russell maintains that its process for designing, selecting, and monitoring the Russell funds was prudent;

that the Russell target date funds were more conservative and more diversified than the prior plan option, the State Street target date funds, which Russell contends is not an apt comparison given differences in active and passive management, glide path design, and asset allocation; that the performance differences on which Plaintiffs rely were modest and measured over a period of less than four years; and that Russell received the same compensation regardless of which funds were selected for the Plan, which Russell contends forecloses any inference of disloyalty. *See generally* ECF No. 200. Although Plaintiffs disagree with Russell's arguments, had the Court or a reviewing court accepted any of these defenses, the Class could have recovered nothing.

Against these risks, the Settlement best serves the interests of the class. It provides an immediate, risk-free recovery of $14.8 million, which outweighs the possibility of uncertain relief in the future. This represents a recovery of approximately 15%–36% of the total damages Plaintiffs estimate the Class might have been awarded had they prevailed at trial, depending on which damages model the Court adopted (Russell disputes both liability and damages). Specht Decl. ¶ 3. Notably, "it is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Williams*, 2024 WL 4574563, at *6 (quoting *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982)). Indeed, "roughly one-sixth of the potential recovery, . . . is fair and adequate." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000). The Settlement here provides an immediate, substantial recovery that strongly weighs in favor of approval.

**2. Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class-member Claims**

The Settlement's method of distributing relief to the Class supports approval here. Fed. R. Civ. P. 23(e)(2)(C)(ii). "The goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Aquino v. 99 Cents Only Stores LLC*, No. 22-cv-01966, 2024 WL 7009745, at *5 (C.D. Cal. Jan. 2, 2024) (quotation omitted). That's precisely what the Settlement provides. Class Members with active plan accounts will automatically receive their settlement allocation as a credit

to their existing individual Plan account. Settlement ¶ 5.2(b). Class Members who are former participants who no longer have active accounts in the Plan will receive a check in the amount of their Entitlement Amount, provided their Entitlement Amount is at least $20.00. Settlement ¶ 5.3(a). This method of distributing relief to current and former class participants is simple and effective.

### 3. Terms of any Proposed Award of Attorney's Fees, Including Timing of Payment

Finally, courts must consider the "proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Even at the post-certification stage, courts should be mindful that "class counsel still has the incentive to conspire with the defendant to reduce compensation for class members in exchange for a larger fee." *Briseño*, 998 F.3d at 1025. Because the Class here was certified in August 2024, the heightened scrutiny reserved for settlements reached *before* class certification does not apply with full force, though the signs of collusion remain relevant. *Cf. Howell*, 298 F.R.D. at 657 (pre-certification settlements "must withstand an even higher level of scrutiny"). As such, courts look for three signs of collusion:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply awarded;
>
> (2) when the parties negotiate a clear sailing arrangement providing for the payment;
>
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (citations and quotations omitted); *accord Howell*, 298 F.R.D. at 657 (enumerating the same three signs of collusion).

None of these signs apply here. Under the Settlement, Class Counsel may seek fees of no more than one-third of the common fund. "For the purposes of preliminarily evaluating collusive behavior . . . one-third is not clearly a disproportionate distribution." *Williams*, 2024 WL 4574563, at *7 (quotation omitted). At this stage, the Court may "reserve judgment on the final award sum until after Class Counsel files its comprehensive motion for an award of attorneys' fees." *Id.*

(quotation omitted). And, other than the provision stating that Class Counsel may seek fees of no more than one-third of the settlement fund, the agreement does not otherwise contain a "clear sailing" provision "whereby the defendants agreed that they would not object to" the fees-and-costs request. *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1050 (9th Cir. 2019).

Finally, a reversion clause is not present in the Settlement Agreement. "A reversion clause transfers unclaimed settlements funds, including unclaimed attorney's fees, back to the defendant." *Brinkmann v. ABM Onsite Servs.–W., Inc.*, No. 17-cv-275-SI, 2021 WL 3932040, at *15 (D. Or. Sept. 2, 2021). The Settlement Agreement provides that all checks not cashed within 120 days of issuance shall be void and shall revert to the Qualified Settlement Fund. Settlement, ¶ 5.6. Any amounts that revert to the Qualified Settlement Fund shall be paid to the Plan for the purpose of defraying administrative fees and expenses of the Plan, and, except for the return of funds if the Settlement is terminated, no amount of the Qualified Settlement Fund will revert back to Russell or any of the Released Parties or Non-Settling Defendants. Settlement ¶¶ 5.6, 9.2.

### C. The Court Should Preliminarily Approve the Bar Order

Because the Settlement resolves the Class's claims against Russell only, the Settlement is conditioned on entry of a Bar Order that bars contribution, indemnification, and related third-party claims between Russell and the Non-Settling Defendants arising from this Action. Settlement ¶¶ 1.6, 1.7, 2.4(g), 9.1(e). The Ninth Circuit permits such bar orders in Rule 23 partial settlements. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225–26 (9th Cir. 1989) (a settling defendant "cannot obtain finality" in multi-party litigation without a bar order barring non-settling defendants' contribution claims); *accord In re Heritage Bond Litig.*, 546 F.3d 667, 676–77 (9th Cir. 2008) (confirming the district court's federal-common-law authority to bar contribution and indemnity claims upon approving a Rule 23 settlement, provided the bar reaches only such claims and not genuinely independent claims). Contribution bars are "both permissible and a well accepted practice utilized to provide certainty to settling parties and to encourage settlement," and the Court's task is simply to "ensure that the settlement is not patently collusive or inadequate" and that the non-settling parties' rights are protected—a standard that "is not a high hurdle." *Hunichen v. Atonomi LLC*, 2021 WL 5854964, at *6–*7 (W.D. Wash. Nov. 12, 2021)

(preliminarily approving a partial settlement and contribution bar). Courts applying this framework in ERISA breach-of-fiduciary-duty cases approve such bars so long as the non-settling defendants receive "an appropriate right of set-off from any judgment imposed against them," the bar is narrowly tailored, and it is entered in good faith with no party "set apart for unfair treatment." *In re WorldCom, Inc. ERISA Litig.*, 339 F. Supp. 2d 561, 568–69 (S.D.N.Y. 2004); *see In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1031 (2d Cir. 1992) (a settlement bar "should not be approved unless it is narrowly tailored and preceded by a judicial determination that the settlement has been entered into in good faith and that no one has been set apart for unfair treatment").

The Bar Order here satisfies that standard. It bars only claims for contribution, indemnification, and other third-party claims between Russell and the Non-Settling Defendants arising from this Action, and only to the extent the alleged injury is liability to the Named Plaintiffs, the Settlement Class, or the Plan—not any independent claims—and it protects the Non-Settling Defendants through a proportionate judgment reduction: any judgment later entered against them "shall be reduced by the greater of the Gross Settlement Amount or the amount that represents the proportionate share of fault that is attributable to Russell, if any." Settlement ¶¶ 1.7, 2.4(g). That "greater of" set-off ensures the Non-Settling Defendants will never pay more than their own share of any liability, which is precisely the protection the Ninth Circuit requires. *See Kaypro*, 884 F.2d at 1231–32 (a bar order must limit non-settling defendants' exposure to "their actual percentage of liability for the amount of total damages determined at trial"). A recent ERISA 401(k) decision preliminarily approved a materially identical partial settlement and bar order on this basis, holding that no separate evidentiary fairness hearing on the bar is required where the proposed judgment reduction is at least as great as the settling defendant's proportionate share of fault. *See Iannone v. AutoZone, Inc.*, 2024 WL 6978549, at *11 (W.D. Tenn. Aug. 21, 2024). Finally, as a practical matter here, the Court has already entered judgment in favor of the Non-Settling Defendants and the deadline to appeal that judgment has expired, so it is extremely unlikely—if not impossible—that they would be subject to any money judgment in this case.

/

**III. The Settlement Notice Plan is Reasonable and Should be Approved**

The court must ensure that notice is sent in a reasonable manner to all class members who would be bound by the settlement. Fed. R. Civ. P. 23(e)(1). The "best notice practicable" under Rule 23 specifically includes "individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). This District applies that standard to settlement notice plans. *See Martinez v. Realogy Corp.*, 2013 WL 5883618, at *8–*9 (D. Nev. Oct. 30, 2013) (notice must be "reasonably calculated to reach interested parties" and, for identifiable members, must provide "individual notice to all members who can be identified through reasonable effort"); *Harris v. U.S. Physical Therapy, Inc.*, 2012 WL 4181367, at *2–*3 (D. Nev. Sept. 18, 2012) (approving a plan of direct individual notice to identifiable members drawn from the defendant's records). That is precisely the type of notice proposed here.

The Settlement provides for direct notice of the settlement to Class Members. Current Participants and Former Participant Class Members will receive notice via electronic means where possible, and via U.S. mail where no valid email address is available. Settlement ¶ 3.2. Moreover, the Settlement Notice will be supplemented by a Settlement Website and telephone support line. *Id.* ¶ 3.3. And if any Class Member's notice is returned as undeliverable, the Settlement Administrator will send it to any forwarding address that is provided, or in the absence of a forwarding address, will use commercially reasonable means to update the Class Member's address and re-mail the notice. *Id.* ¶ 3.2. Additionally, the Settlement Notice will provide Participant Class Members and Former Participant Class Members with the following information: (1) a description of the lawsuit and the Gross Settlement Amount [Ex. 1 at 1]; (2) the method of calculating and distributing the Entitlement Amount [Ex.1 at 1-2, 5-6]; (3) the URL for the Settlement Website [Ex.1 at 2]; (4) the URL to access the case docket via PACER [Ex.1 at 2]; (5) the date of the final approval hearing and a statement that the date may change with a notice posted on the Settlement Website [Ex.1 at 2]; and (6) how to object to the Settlement Agreement. [Ex.1 at 7-8] To the extent that Class Members have any questions or object to the Settlement Agreement, the notice will provide instructions to Class Members on how to submit written objections, and that any written objections and supporting documentation must be mailed to Class Counsel and

Russell's Counsel at least 21 days before the Fairness Hearing. [Ex.1 at 7].

This notice is more than sufficient to meet the requirements under Rule 23 and due process and should be approved. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (concluding the class action settlement notice was "satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard" (quotation omitted)).

In addition, within ten calendar days after this motion is filed, the Settlement Administrator, on behalf of Russell, will serve notice of the proposed Settlement on the appropriate federal and state officials in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715. Settlement ¶¶ 2.3, 3.1; *see Martinez*, 2013 WL 5883618, at *9 (describing the § 1715(b) notice obligation).

## IV. Class Certification Should be Reaffirmed for Settlement Purposes

This Court previously certified a class in this case for litigation purposes. ECF No. 195. The Settlement identifies this same class as the Settlement Class for purposes of the Settlement. Settlement ¶ 1.49. "Because the Settlement Class has not changed," there is "no reason to revisit the analysis of Rule 23" and the Court's certification order should be reaffirmed. *Sadowska v. Volkswagen Grp. of Am., Inc.*, No. CV 11-00665, 2013 WL 9600948, at *10 (C.D. Cal. Sept. 25, 2013). Nevertheless, should the Court be inclined revisit the Rule 23 analysis, the requirements for class certification remain satisfied.

### A. The Class Satisfies Rule 23(a)

Rule 23(a) sets forth four threshold requirements applicable to all class actions: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). The proposed class here satisfies each of these requirements.

#### 1. Numerosity

Numerosity requires that the number of persons in the proposed class is so numerous that joinder of all class members would be impracticable. Fed. R. Civ. P. 23(a)(1); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below

21." *Cottle v. Plaid, Inc.*, 340 F.R.D. 356, 370 (N.D. Cal. Nov. 19, 2021); *see A.F. ex rel. Legaard v. Providence Health Plan*, 300 F.R.D. 474, 480 (D. Or. 2013) (concluding that a class of 259 members in ERISA suit satisfied the numerosity requirement); *McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Tr.*, 268 F.R.D. 670, 673 (W.D. Wash. 2010) (certifying a class size of 27 known members for purposes of ERISA suit). Here, the Plan had thousands of participants, all of whom are members of the Settlement Class. ECF No. 192 ¶ 2. Numerosity is clearly satisfied.

**2. Commonality**

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, Plaintiffs must show that the "class members have suffered the same injury." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. In other words, "[the] common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* In the context of ERISA suits, the commonality requirement is generally satisfied when the common question concerns the defendant's conduct in administering the plan and its impact on the class as a whole. *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 108 (N.D. Cal. 2008) (concluding the commonality requirement was met where claims centered on defendant's conduct of self-dealing, conflicts of interest, and imprudent selection of investment options, among other things).

This case presents exactly these common questions. Plaintiffs' claims turn on Russell's conduct in selecting and retaining Russell funds on the Plan's investment menu and the process it used to do so—questions that apply to the Plan as a whole. *See* ECF No. 241. Resolution of these common questions will determine the claims, satisfying Rule 23's commonality requirement. *See e.g., Andrews v. Wilson Elec. Serv. Corp.*, No. CV-24-00995, 2025 WL 2180656, at *4 (D. Ariz. July 29, 2025) (finding commonality requirement was met where the common questions existed of whether defendants were fiduciaries of the ESOP and whether defendants failed to comply with ERISA standards of prudence, loyalty, and impartiality); *Munro v. Univ. of S. Cal.*, No. 16-cv-06191, 2019 WL 7842551, at *4 (C.D. Cal. Dec. 20, 2019) (concluding that the commonality

requirement was met because "[p]laintiffs are suing on behalf of the Plans, the centralized administration of which is common to all putative class members"); *Coppel v. SeaWorld Parks & Ent., Inc.*, 347 F.R.D. 338, 355–56 (S.D. Cal. 2024) (concluding that common questions of a defendant's fiduciary status, breach, and measure of relief satisfied commonality); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 15-cv-1614, 2017 WL 2655678, at *4 (C.D. Cal. June 15, 2017) (finding commonality was met based on similar questions); *In re Northrop Grumman Corp. ERISA Litig.*, No. CV 06-06213, 2011 WL 3505264, at *8 (C.D. Cal. Mar. 29, 2011) (same); *Kanawi*, 254 F.R.D. at 108 (same).

**3. Typicality**

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). While similar to commonality, the typicality requirement "focuses on the class representative's claim—but not the specific facts from which the claim arose—and ensures that the interest of the class representative aligns with the interests of the class." *Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1201–02 (9th Cir. 2024) (quotation omitted); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge."). The inquiry here is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Small*, 122 F.4th at 1202 (quotation omitted).

Here, the Class Representatives are typical of the class because they raise common legal clams arising from a common course of conduct by Defendants. To the extent Defendants failed to act solely in the best interests of participants, Defendants' duty of loyalty was breached with respect to the Plan as a whole. Similarly, to the extent that Defendants lacked a prudent process for managing or monitoring the Plan's investments, that process was defective with respect to the Plan as a whole. Typicality is thus satisfied. *See Kanawi*, 254 F.R.D. at 110 (finding typicality requirement was met where plaintiffs alleged that defendants "breached their fiduciary duties against the Plan as a whole and against every participant in the Plan" and where "[p]laintiffs assert the same injury arising from the same course of conduct including, inter alia, allowing excessive

fees, misleading participants, and maintaining imprudent investments"); *see also Baird v. Blackrock Inst. Tr. Co., N.A.*, No. 17-cv-01892, 2020 WL 7389772, at *13 (N.D. Cal. Feb. 11, 2020) (finding typicality where plaintiffs alleged injury because of defendants' management of the Plan and where "all putative class members allegedly suffered the same injury based on the same course of conduct").

**4. Adequacy**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts consider two factors: (1) whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and (2) whether "the named plaintiffs' and their counsel [will] prosecute the action vigorously on behalf of the class[.]" *Small*, 122 F.4th at 1202 (quotation omitted). "If either answer is no, the representative is inadequate." *Id.* Both factors are met here.

First, the Class Representatives are not aware of any conflicts of interest between themselves and other Plan participants, and they have vowed to faithfully represent the interests of other Class Members. ECF No. 187-34 ¶¶ 6–8; ECF No. 187-35 ¶¶ 6–8; ECF No. 187-36 ¶¶ 6–8. Their interests in pursuing a recovery on behalf of the Plan are aligned with the interests of the Settlement Class, and ERISA grants them the express right to sue on behalf of the Plan. *See* 29 U.S.C. §§ 1109(a), 1132(a).

Second, Class Counsel is also adequate. Nichols Kaster has extensive experience litigating class actions, including ERISA breach of fiduciary duty cases, and its attorneys are recognized as knowledgeable in this area of law. Specht Decl. ¶¶ 6–14; *see also Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 Civ. 9936, 2017 WL 3868803, at *11 (S.D.N.Y. Sept. 5, 2017) (noting that Class Counsel from Nichols Kaster are "experienced litigators who serve as class counsel in ERISA actions involving defined-contribution plans and serve or served as counsel of record in other actions alleging breach of fiduciary duty claims under ERISA," and appointing Nichols Kaster as class counsel (internal citations omitted)). Nichols Kaster has vigorously pursued this matter on behalf of the Class, achieving a significant recovery that provides a substantial financial benefit to the Plan and members of the Settlement Class.

**B. The Proposed Class Satisfies Rule 23(b)(1)**

**1. Rule 23(b)(1)(A)**

Once the requirements of Rule 23(a) are met, the proposed class must also satisfy one of the subparts of Rule 23(b). Here, the Settlement Class satisfies Rule 23(b)(1). Under that subpart, a class may be certified if prosecuting separate actions by individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1). Cases such as this, which involve allegations of fiduciary breaches to a trust or a plan, are precisely the type of cases that are encompassed by the rule. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833–34 (1999) (noting that a breach of trust action is a "classic example" of a Rule 23(b)(1) class); *Kanawi*, 254 F.R.D. at 111 ("Most ERISA class action cases are certified under Rule 23(b)(1)."); *In re Northrop Grumman Corp.*, 2011 WL 3505264, at *15 (same); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) ("In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held.").

Here, individual adjudications would create incompatible standards of conduct for the Defendants. Since the fiduciary duties imposed by ERISA are "duties with respect to a plan," *see* 29 U.S.C. § 1104, separate actions by individual Plan participants could lead to differing, incompatible rulings about the Plan's management or restoration of the Plan's assets. *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 577 (D. Minn. 2014) ("[S]eparate lawsuits by various individual Plan participants to vindicate the rights of the Plan could establish incompatible standards to govern Defendants' conduct, such as . . . determinations of differing 'prudent alternatives' against which to measure the proprietary investments, or an order that Defendants be removed as fiduciaries."). "In light of this risk, Plaintiffs have successfully satisfied the

requirements of Rule 23(b)(1)(A).” *Kanawi*, 254 F.R.D. at 111.

**2. Rule 23(b)(1)(B)**

For similar reasons, class certification is also appropriate under Rule 23(b)(1)(B). Any determination of Defendants’ liability would necessarily adhere to the Plan as a whole and would, therefore, be dispositive of, impair, or impede the interests of other Plan members. For this reason, the Advisory Committee Notes to Rule 23 expressly recognize that class certification is appropriate under Rule 23(b)(1)(B) in “an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust.” Fed. R. Civ. P. 23, Advisory Committee Note (1966).

As previously mentioned, breach of fiduciary duty cases under ERISA are “classic examples” of matters appropriate for Rule 23(b)(1)(B) class certification.” *Ortiz*, 527 U.S. at 833–34; *see also Moreno*, 2017 WL 3868803, at *8 (“Plaintiffs’ action is akin to the ‘classic’ example contemplated by the Supreme Court in *Ortiz*: Plaintiffs allege Defendants’ conduct affected members of a class of thousands similarly as each were exposed to the same investment options and seek to restore losses to the Plan’s assets, which are comprised of the individual accounts that allegedly paid excessive fees.”). To be sure, numerous courts have recognized that cases like this are properly certified under Rule 23(b)(1)(B). *See, e.g., Grabek v. Northrop Grumman Corp.*, 346 F. App’x 151, 153 (9th Cir. 2009) (observing that action for breach of fiduciary duties under ERISA “appears to meet the requirements of Fed. R. Civ. P. 23(a) and (b),” since breaches of trust “similarly affecting the members of a large class of beneficiaries” are classic examples of cases appropriate for Rule 23(b)(1)(B) class treatment); *Urakhchin*, 2017 WL 2655678, at *8 (stating that “any judgment on Defendants’ liability would necessarily affect the determination of any claim for monetary relief for this same conduct brought by other Plan participants in any concurrent or future actions”); *In re Northrop Grumman Corp.*, 2011 WL 3505264, at *18 (“Given that plaintiffs assert §§ 502(a)(2) and (3) claims on behalf of the plan and allege breaches of fiduciary duty by defendants that will, if proved, affect every plan participant, the court concludes that ‘prosecuting separate actions by or against individual class members that, as a practical matter,

would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.'" (quoting Fed. R. Civ. P. 23(b)(1)(B))).

**V. Appointment of Settlement Administrator and Fairness Hearing**

After reviewing proposals from multiple candidates, Class Counsel has selected Atticus Administration, LLC ("Atticus"), to serve as Settlement Administrator. Specht Decl. ¶ 20. Atticus is an experienced, reputable settlement-administration provider with experience administering ERISA settlements similar to the one in this case. *Id.* Atticus's proposal was the most comprehensive and cost-effective proposal, and the Court should approve the appointment of Atticus as Settlement Administrator for this case. *Id.*

Finally, pursuant to Fed. R. Civ. P. 23(e)(2), the Court must schedule "a hearing" to consider whether the Settlement is "fair, reasonable, and adequate." In order to provide time for the notice procedure described above and in the Settlement to occur, the Court should schedule the fairness hearing on a date no sooner than 120 calendar days from the date the Court enters the Preliminary Approval Order.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion should be granted.

Dated: November 17, 2026

Respectfully submitted,

*/s/ Brock J. Specht*

NICHOLS KASTER, PLLP
Brock J. Specht, MN Bar No. 0388343*
Matthew H. Morgan, MN Bar No. 0304657*
4700 IDS Center, 80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
bspecht@nka.com
morgan@nka.com
* LR IA 11-2 petition approved

Paul S. Padda
NV Bar No. 10417
PAUL PADDA LAW, PLLC
4560 South Decatur Blvd., Suite 300
Las Vegas, NV 89103
Tel: (702) 366- 1888
psp@paulpaddalaw.com

ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASS

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2026, a true and correct copy of the foregoing was served via the Court's electronic filing system upon all counsel of record in this matter.

*/s/ Brock J. Specht*
Brock J. Specht