# Exhibit 1

## Class Action Settlement Agreement dated Nov. 10, 2026

**EXECUTION COPY**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

DANNY WANEK, JUAN DUARTE, AND RICK RUBERTON, as representatives of a class of similarly situated persons, and on behalf of the Caesars Entertainment Corporation Savings & Retirement Plan,

Plaintiffs,

v.

RUSSELL INVESTMENTS TRUST COMPANY, CAESARS HOLDINGS INC., THE PLAN INVESTMENT COMMITTEE, AND THE 401(K) PLAN COMMITTEE

Defendants

Case No. 2:21-cv-00961-CDS-BNW

# CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement, dated November 10, 2026 (the "Settlement Agreement"), is made and entered into by and among: (i) Plaintiffs Danny Wanek, Juan Duarte, and Rick Ruberton (on behalf of themselves, each Settlement Class Member, and the Plan), by and through their counsel of record in the Action, and (ii) Russell Investments Trust Company, by and through its counsel of record in the Action. The Settlement Agreement is intended to fully, finally, and forever resolve, discharge, and settle Plaintiffs' Released Claims against Russell, subject to the approval of the Court and the terms and conditions set forth in this Settlement Agreement.

## ARTICLE 1

## DEFINITIONS

1.1 "Action" means the civil action captioned Wanek v. Russell Investments Trust Company, et al., Case No. 2:21-cv-00961-CDS-BNW, pending in the United States District Court for the District of Nevada.

1.2 "Administrative Expenses" means all expenses incurred in the administration of this Settlement Agreement, including but not limited to (a) all fees, expenses, and costs associated with the production and dissemination of the Notices to Settlement Class Members, including any supplemental notice made necessary by recordkeeper data issues; (b) tax expenses related to the Settlement Agreement and its implementation (including taxes and tax expenses described in Section 4.6); (c) all expenses incurred by the Settlement Administrator in

administering and effectuating this settlement, including all costs associated with the calculations and distributions of funds pursuant to the Plan of Allocation and distributing the CAFA Notice; (d) all fees and expenses associated with the Settlement Website and telephone support line described in Article 3; (e) all fees charged by the Settlement Administrator; (f) all expenses and costs associated with the distribution of funds under the Plan of Allocation, including but not limited to the fees of any current or former recordkeeper associated with implementing this Settlement Agreement, facilitating the distribution of funds under the Plan of Allocation, gathering, retrieving, converting, validating, reconciling, correcting, or supplementing the data necessary to prepare and implement the Plan of Allocation, address tracing, check reissuance, tax-reporting adjustments, and any Court-approved vendor or expert assistance related to such data; and (g) all fees and expenses charged by the Independent Fiduciary and the Escrow Agent. All Administrative Expenses approved by the Court and all tax-related Administrative Expenses pursuant to Section 4.6 shall be paid from the Gross Settlement Amount.

1.3 "Alternate Payee" means a person, other than a Participant Class Member, Former Participant Class Member, or Beneficiary, who is entitled to a benefit under the Plan as a result of a QDRO, where the QDRO relates to a Participant Class Member or Former Participant Class Member's balance during the Class Period.

1.4 "Attorneys' Fees and Costs" means the amount awarded by the Court as compensation for the services provided by Class Counsel and the reasonable costs and expenses incurred by Class Counsel in connection with the Action, including the investigation leading to it, which shall be recovered from the Gross Settlement Amount.

1.5 "Average Settlement Score" has the meaning ascribed to it in Section 5.1(a) herein.

1.6 "Bar Order" means the settlement bar order as set forth in Section 2.4(g).

1.7 "Barred Claims" means (a) Claims asserted or that could have been or could be asserted by the Non-Settling Defendants, including the Non-Settling Defendants' past, present, or future parent companies, subsidiaries, affiliates, divisions, joint ventures, members, successors, assigns, representatives, attorneys, agents, insurers, reinsurers, shareholders, officers, directors, managers, employees or partners, against Russell (including Russell's past, present, or future parent companies, subsidiaries, affiliates, divisions, joint ventures, members, successors, assigns, representatives, attorneys, agents, insurers, reinsurers, shareholders, officers, directors, managers, employees or partners) for indemnification and/or contribution (however denominated) and/or third-party Claims of any type arising from this Action to the extent the injury to the Non-Settling defendants is the Non-Settling Defendants' liability to the Named Plaintiffs, Settlement Class Members, and/or the Plan (excluding contractual indemnity claims), or (b) Claims asserted or that could have been or could be asserted by Russell, or Russell's past, present, or future parent companies, subsidiaries, affiliates, divisions, joint ventures, members, successors, assigns, representatives, attorneys, agents, insurers, reinsurers, shareholders, officers, directors, managers, employees or partners, against the Non-Settling Defendants (including their past, present, or future parent companies, subsidiaries, affiliates, divisions, joint ventures, members, assigns, representatives, attorneys, agents, insurers, reinsurers, shareholders, officers, directors, managers, employees or partners) for indemnification and/or contribution (however denominated) and/or

third-party Claims of any type arising from this Action to the extent the injury to Russell is its liability to the Named Plaintiffs, Settlement Class Members, and/or the Plan (excluding contractual indemnity claims).

1.8 “Beneficiary” means a person who currently is entitled to receive a benefit under the Plan that is derivative of the interest of a deceased Participant Class Member or Former Participant Class Member, other than an Alternate Payee. A Beneficiary includes, but is not limited to, a surviving spouse, domestic partner, child or other person designated by the Participant Class Member or Former Participant Class Member as determined under the terms of the Plan who currently is entitled to a benefit.

1.9 “CAFA Notice” means the notice(s) required to be provided pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 (“CAFA”).

1.10 “Claims” means any and all manner of claims, actions, causes of actions, potential actions, suits, arbitrations, controversies, costs, damages, losses, obligations, liabilities, judgments, and demands whatsoever, known or unknown, suspected or unsuspected, accrued or unaccrued, whether class, individual, or otherwise, arising under the laws, regulations, or common law of the United States of America, any state or political subdivision thereof, or any foreign country or jurisdiction, in law, in contract, or in equity, and regardless of legal theory.

1.11 “Class Counsel” means Nichols Kaster, PLLP.

1.12 “Class Period” means August 1, 2017, through December 17, 2021, inclusive.

1.13 “Complaints” means the complaints filed in the Action, including the Fifth Amended Complaint filed on July 15, 2024 (ECF No. 175).

1.14 “Confidentiality Order” means the Stipulated Protective Order entered in the Action on September 21, 2021 (ECF No. 124).

1.15 “Court” means the United States District Court for the District of Nevada.

1.16 “Defendants” means Russell Investments Trust Company, Caesars Holdings Inc., the Plan Investment Committee, and the 401(k) Plan Committee.

1.17 “Entitlement Amount” means that portion of the Net Settlement Amount payable to an individual Participant Class Member or Former Participant Class Member, as determined according to the procedures described in Article 5 herein.

1.18 “ERISA” means the Employee Retirement Income Security Act of 1974, as amended.

1.19 “Escrow Account” means an account at an established financial institution that is established for the deposit of the Gross Settlement Amount and amounts relating to it, such as income earned on the investment of the Gross Settlement Amount.

1.20 "Escrow Agent" means an independent contractor to be retained by Class Counsel and/or the Settlement Administrator, which will serve as escrow agent for any portion of the Gross Settlement Amount deposited in or accruing in the Escrow Account pursuant to this Settlement. Subject to the approval of Class Counsel, the Settlement Administrator may also serve as Escrow Agent under this agreement.

1.21 "Fairness Hearing" means the hearing to be held before the Court pursuant to Federal Rule of Civil Procedure 23(e) to determine whether the Settlement Agreement should receive final approval by the Court.

1.22 "Final Approval" means the entry of the Final Approval Order.

1.23 "Final Approval Order" means the order and final judgment of the Court approving the Settlement, in substantially the form submitted in connection with Plaintiff's Motion for Final Approval of the Settlement.

1.24 "Former Participant Class Member" means any Settlement Class Member who had a Plan account with a balance greater than $0.00 at any point during the Class Period but who does not have a Plan account with a balance greater than $0.00 as of the date of the Preliminary Approval Order.

1.25 "Gross Settlement Amount" means the sum of fourteen million eight hundred thousand U.S. dollars (USD $14,800,000.00), contributed to the Qualified Settlement Fund as described in Article 4 herein.

1.26 "Independent Fiduciary" means the person or entity selected by a current Plan fiduciary to serve as an independent fiduciary with respect to the Settlement Agreement for the purpose of rendering the determination described in Section 2.2 herein.

1.27 "Named Plaintiffs" means Danny Wanek, Juan Duarte, and Rick Ruberton.

1.28 "Net Settlement Amount" means the Gross Settlement Amount, plus any interest or income earned on the Qualified Settlement Fund, minus: (a) all Attorneys' Fees and Costs approved by the Court; (b) any Service Award approved by the Court; and (c) all Administrative Expenses approved by the Court and tax-related Administrative Expenses.

1.29 "Notices" means the forms of Court-approved notices of this Settlement Agreement that are disseminated to Settlement Class Members. The Settling Parties shall propose that the Court approve the forms of notice attached as Exhibits 1 and 2 hereto.

1.30 "Non-Settling Defendants" means Caesars Holdings Inc., the Plan Investment Committee, and the 401(k) Plan Committee.

1.31 "Participant Class Member" means any Settlement Class Member who had a Plan account with a balance greater than $0.00 at any point during the Class Period, and, as of the date of the Preliminary Approval Order, had a Plan account with a balance greater than $0.00.

1.32 "Plaintiffs' Released Claims" means, subject to the exclusions in Section 7.5 and the paragraph immediately following this definition, any and all Claims, actions, demands, rights, obligations, liabilities, damages, attorneys' fees, expenses, costs, and causes of action against any of the Released Parties with respect to the Plan arising on or before the date of preliminary approval of the Settlement:

(a) that were asserted in the Action against Russell or could have been asserted in the Action or any other court, forum, or proceeding against Russell or any of the other Released Parties based on or arising from any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions, or occurrences asserted in the Action (including any assertion set forth in any of the Complaints, and in any submissions made by the Named Plaintiffs in connection with the Action or any other submission made by the Named Plaintiffs, Settlement Class Members, or their expert witnesses or Class Counsel in connection with the Action), whether or not pleaded in the Complaints, including but not limited to those based on: (1) the selection, retention, oversight, or monitoring of the Russell Funds; (2) the selection, retention, oversight, or monitoring of Russell as a service provider; (3) the performance, fees, expenses, share classes, subadvisors and other characteristics of the Russell Funds; (4) Russell's performance as a fiduciary to the Plan or the fees charged to the Plan or its participants, or the services provided by Russell to the Plan or its participants; (5) the restructuring or modification of the Plan's investment lineup; (6) alleged self-dealing, conflicts of interest, or prohibited transactions in relation to the Russell Funds, or in relation to the selection, monitoring, oversight or retention of Russell as a Plan service provider; (7) the overall structure, management, or monitoring of the Plan's investment menu; (8) the compliance with the Plan's governing documents and investment policy statements with respect to the selection, retention, oversight, and monitoring of Russell as a Plan service provider or the selection, retention, oversight, and monitoring of the Russell Funds; and (9) disclosures or failures to disclose information concerning Russell as a Plan service provider or the Russell Funds;

(b) that would be barred by *res judicata* based on the Court's entry of the Final Approval Order;

(c) that arise from the direction to calculate, the calculation of, and/or the method or manner of the allocation of the Net Settlement Amount pursuant to the Plan of Allocation; or

(d) that arise from the approval by the Independent Fiduciary of the Settlement Agreement.

Notwithstanding anything herein, the following shall not be included in the definition of Plaintiffs' Released Claims: (i) Claims to enforce the Settlement Agreement; (ii) Claims for individual vested benefits brought pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) that are otherwise due under the terms of the Plan provided that such Claim is not based on any conduct described in Plaintiffs' Released Claims; and (iii) Named Plaintiffs' and Settlement Class Members' Claims against the Non-Settling Defendants in the Action.

1.33 "Plan" means the Caesars Entertainment Corporation Savings & Retirement Plan and any predecessor or successor plan.

1.34 "Plan of Allocation" means the methodology for allocating and distributing the Net Settlement Amount as described in Article 5 herein.

1.35 "Preliminary Approval Order" means the order of the Court preliminarily approving the Settlement Agreement, in substantially the form submitted in connection with Named Plaintiffs' motion for entry of Preliminary Approval Order.

1.36 "PTE 2003-39" means U.S. Department of Labor Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75,632 (Dec. 31, 2003), as amended.

1.37 "QDRO" or "Qualified Domestic Relations Order" means a judgment, decree, or order (including the approval of a property settlement) that is made pursuant to state domestic relations law (including community property law) and that relates to the provision of child support, alimony payments, or marital property rights for the benefit of a spouse, former spouse, child, or other dependent of a Participant Class Member or Former Participant Class Member and which has been determined qualified pursuant to the Plan's procedures.

1.38 "Qualified Settlement Fund" means the interest-bearing settlement fund account to be established and maintained by the Escrow Agent as described in Article 4 herein.

1.39 "Recordkeeper" means the entity engaged to or responsible for providing recordkeeping services for the Plan, except that references to data or information provided by the Recordkeeper may include information provided, requested, or facilitated from any current or former recordkeeper, including Alight, to the extent such entity maintains or may maintain records necessary for notice, allocation, distribution, tax reporting, or administration of the Settlement.

1.40 "Released Parties" means (a) Russell; (b) any of Russell's past, present, and future parent corporation(s), subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, and assigns, and any individual, partnership, corporation, or any other form of entity or organization that controls, is controlled by, or is under common control with any of the foregoing; (c) the Russell Funds and their trustees, sub-advisors, and investment managers, and (d) with respect to (a), (b), and (c) above, all of their affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, assigns, employee benefit plan fiduciaries, administrators, shareholders, officers, directors, trustees, partners, agents, managers, members, employees, representatives, attorneys, administrators, heirs, executors, insurers, and all persons acting under, by, through, or in concert with any of them. "Released Parties" shall not include Caesars Holdings Inc. or the Plan Investment Committee and the 401(k) Plan Committee.

1.41 "Russell" means Russell Investments Trust Company.

1.42 "Russell's Counsel" means Milbank LLP, and Parsons Behle & Latimer.

1.43 "Russell Funds" means the Russell-affiliated age-based or target-date funds and the Russell-affiliated asset-class funds that were investment options in the Plan during the Class Period, including the RITC Retirement Fund, RITC 2020 Strategy Fund, RITC 2025 Strategy Fund, RITC 2030 Strategy Fund, RITC 2035 Strategy Fund, RITC 2040 Strategy Fund, RITC 2045 Strategy Fund, RITC 2050 Strategy Fund, RITC 2055 Strategy Fund, RITC 2060 Strategy Fund, RITC 2065 Strategy Fund, RITC Russell Investments Russell 1000® Index Fund,

RITC Enhanced Index U.S. Equity Fund, RITC Small Cap Fund, RITC International Index Fund, RITC All International Markets Fund, RITC Multi-Manager Bond Fund, RITC Fixed Income II Fund, RITC Real Asset Fund, RITC Short-Term Investment Fund, and any predecessors, successors, and renamed versions of such funds.

1.44 "Russell's Released Claims" means all Claims, whether arising under federal, state, or any other law, which have been, or could have been, asserted in the Action or in any court or forum, by Russell against the Named Plaintiffs or any Settlement Class Members, or their attorneys (including Class Counsel), which arise out of the institution or prosecution of the Action, except for Claims to enforce the Settlement Agreement.

1.45 "Service Award" means any incentive or service award awarded by the Court to the Named Plaintiffs for their service as class representative.

1.46 "Settlement" means the settlement of the Action contemplated by this Settlement Agreement.

1.47 "Settlement Administrator" means an independent contractor to be retained by Class Counsel and approved by the Court.

1.48 "Settlement Agreement" means this agreement and its exhibits.

1.49 "Settlement Class" means: "All participants and beneficiaries of the Caesars Entertainment Corporation Savings & Retirement Plan at any time from August 1, 2017, through December 17, 2021, excluding any employees of Caesars with responsibility for the Plan's investment or administrative functions." The Settlement Class is consistent with the class previously certified by the Court (ECF No. 195) (the "Class" or "Certified Class").

1.50 "Settlement Class Member" in the singular shall mean an individual member of the Settlement Class and "Settlement Class Members" in the plural shall mean all members of the Settlement Class.

1.51 "Settlement Effective Date" means one business day following the latest of (a) if there are no objections to the Settlement by any members of the Settlement Class or any of the Non-Settling Defendants, the date in which the Court enters the Final Approval Order; (b) if there are objections to the Settlement by one or more members of the Settlement Class or any of the Non-Settling Defendants, the date upon which the time expires for filing or noticing any appeal of the Final Approval Order; or (c) if there are any appeals, the date of dismissal or completion of any appeal, in a manner that finally affirms and leaves in place the Final Approval Order without any material modifications, and all proceedings arising out of the appeal(s) (including, but not limited to, the expiration of all deadlines for motions for reconsideration or rehearing or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal(s) following decisions on remand).

1.52 "Settlement Website" means the website established by the Settlement Administrator as described in Section 3.3 herein.

1.53 "Settling Parties" means Russell and the Named Plaintiffs, on behalf of themselves and the Settlement Class, each of whom individually are a "Settling Party."

1.54 "Unknown Claims" means any and all Plaintiffs' Released Claims which the Named Plaintiffs or the Settlement Class Members do not know or suspect to exist as of the Settlement Effective Date, which if known might have affected their decision(s) with respect to the Settlement.

## ARTICLE 2

## SETTLEMENT APPROVAL

2.1 Preliminary Approval by Court. No later than seven (7) calendar days after full execution of this Settlement Agreement, or such other date as the Court may order, the Named Plaintiffs, through Class Counsel, shall apply to the Court for entry of the Preliminary Approval Order, in substantially the form attached hereto as Exhibit 3, which shall include, among other provisions, a request that the Court:

(a) preliminarily approve this Settlement Agreement for purposes of disseminating notice to the Settlement Class;

(b) approve the form and contents of the Notices and hold that transmitting copies of the Notice to Settlement Class Members by email to the email address on file with the Plan or first class mail, postage prepaid, complies fully with the requirements of Federal Rule of Civil Procedure 23, the United States Constitution, and any other applicable law;

(c) preliminarily bar and enjoin the institution and prosecution of any Plaintiffs' Released Claims against any Released Parties by Settlement Class Members pending final approval of this Settlement Agreement, even if any Settlement Class Member may thereafter discover facts in addition to or different from those which the Settlement Class Members or Class Counsel now know or believe to be true with respect to the Action and Plaintiffs' Released Claims;

(d) provide that, pending final determination of whether the Settlement Agreement should be approved, no Settlement Class Member may directly, through representatives, or in any other capacity, commence any action or proceeding in any court or tribunal asserting any of Plaintiffs' Released Claims against Russell or the Released Parties;

(e) preliminarily approve the Bar Order, subject to a Final Approval Order;

(f) schedule a Fairness Hearing to (1) review comments and/or objections regarding this Settlement Agreement, (2) consider the fairness, reasonableness, and adequacy of this Settlement Agreement, (3) consider whether the Court should issue a Final Approval Order approving this Settlement Agreement, awarding any Attorneys' Fees and Costs, Administrative Expenses, and Service Award, and dismissing Russell from this Action with prejudice, and (4) consider such other matters as the Court may deem appropriate;

(g) provide that any objections to any aspect of the Settlement

Agreement shall be heard, and any papers and documents submitted in support of said objections shall be considered, by the Court at the Fairness Hearing if they have been timely sent to Class Counsel and Russell's Counsel. To be timely, the objection and any supporting papers or documents must be sent to Class Counsel and Russell's Counsel at least 21 calendar days prior to the Fairness Hearing (or by such other deadline as determined by the Court). Any person wishing to speak at the Fairness Hearing shall serve a notice of intent to appear on Class Counsel and Russell's Counsel at least 21 calendar days prior to the Fairness Hearing (or by such other deadline as determined by the Court); and

(h) provide that a Settling Party may, but is not required to, serve discovery requests, including requests for documents and notices of deposition not to exceed two (2) hours in length, on any objector within ten (10) calendar days of receipt of the objection, and that any responses to discovery or depositions must be completed within ten (10) calendar days of the discovery request being served on the objector; and

(i) provide that any Settling Party may file a response to an objection by a Settlement Class Member before the Fairness Hearing.

2.2 Review by Independent Fiduciary. The Settling Parties shall seek the selection and retention of the Independent Fiduciary, on behalf of the Plan, to determine whether to approve and authorize the settlement of Plaintiffs' Released Claims on behalf of the Plan.

(a) The Independent Fiduciary shall comply with all relevant requirements set forth in PTE 2003-39.

(b) The Independent Fiduciary shall notify Russell of its determination in writing (with copies to Class Counsel and Russell's Counsel) and in accordance with PTE 2003-39, which notification shall be delivered no later than thirty (30) calendar days before the Fairness Hearing, unless otherwise ordered by the Court. If information reasonably necessary to evaluate the Settlement Agreement and the procedures for administering the Settlement, including any recordkeeper data protocol described in Section 3.2, is not available in sufficient time for the Independent Fiduciary to make its determination at least thirty (30) calendar days before the Fairness Hearing, the Settling Parties shall use reasonable efforts to seek an adjournment or other scheduling relief from the Court so that the Independent Fiduciary's determination is provided before the Fairness Hearing. Nothing in this Section 2.2(b) permits the Independent Fiduciary's determination to be delivered after the Fairness Hearing unless the Court orders otherwise.

(c) The Settling Parties shall comply with reasonable requests for information made by the Independent Fiduciary for purposes of evaluating the Settlement Agreement.

(d) All fees and expenses associated with the Independent Fiduciary's retention, services, and determination shall be considered Administrative Expenses.

2.3 Class Action Fairness Act Notice. The Settlement Administrator, on behalf of Russell, shall comply with the notice requirements of 28 U.S.C. § 1715 no later than ten (10) calendar days after this Settlement Agreement is filed with the Court for preliminary approval, as provided in Section 3.1, based on the best reasonably available information then available to the

Settlement Administrator regarding the states in which Settlement Class Members reside. If later-received recordkeeper data materially changes the states in which Settlement Class Members are understood to reside or otherwise makes supplemental notice reasonably necessary, the Settlement Administrator, on behalf of Russell, shall use reasonable efforts to provide supplemental CAFA notice within ten (10) business days after receiving and validating such data. Pursuant to the Preliminary Approval Order, the Settlement Administrator shall provide Class Counsel and Russell's Counsel with a declaration confirming compliance prior to the deadline for Plaintiffs' motion for Final Approval.

2.4 Final Approval by Court. No later than fourteen (14) calendar days before the Fairness Hearing, or by such other deadline as specified by the Court, and provided that the Settlement Administrator has filed or provided any then-available declarations regarding CAFA compliance and dissemination of the Notices, Class Counsel shall submit a motion to the Court requesting final approval of the Settlement Agreement and entry of the Final Approval Order, which shall include, among other provisions, a request that the Court:

(a) dismiss with prejudice all of Plaintiffs' Released Claims in the Action, whether asserted by the Named Plaintiffs on their own behalf or on behalf of the Class, without costs to any of the Settling Parties, except as contemplated by this Settlement Agreement;

(b) decree that neither the Final Approval Order nor this Settlement Agreement constitutes an admission by any Released Party of any liability or wrongdoing;

(c) bar and enjoin the Named Plaintiffs and all Settlement Class Members from asserting any of Plaintiffs' Released Claims against any of the Released Parties;

(d) determine that this Settlement Agreement is entered into in good faith and represents a fair, reasonable, and adequate settlement that is in the best interests of the Settlement Class Members;

(e) determine that all applicable CAFA requirements have been satisfied;

(f) preserve the Court's continuing and exclusive jurisdiction over the Settling Parties and all Settlement Class Members to administer, construe, and enforce this Settlement Agreement in accordance with its terms for the mutual benefit of the Settling Parties, but without affecting the finality of the Final Approval Order; and,

(g) enter the Bar Order under which:

(1) Russell and any person purporting to act on its behalf or asserting any claim under or through it are permanently barred, enjoined, and restrained from filing, commencing, prosecuting, maintaining or asserting any Barred Claims against the Non-Settling Defendants in this Action or in any other forum, action or proceeding of any kind, as all such Barred Claims shall be extinguished, precluded, discharged, satisfied, and unenforceable; and

(2) the Non-Settling Defendants, and any person purporting to act on the Non-Settling Defendants' behalf or asserting any claim under or through them are permanently barred, enjoined, and restrained from filing, commencing, prosecuting, maintaining or asserting any Barred Claims against Russell or the Released Parties in this Action or in any other forum, action or proceeding of any kind, as all such Barred Claims shall be extinguished, precluded, discharged, satisfied, and unenforceable.

(3) any judgment entered in favor of the Named Plaintiffs or the Class against the Non-Settling Defendants in the Action shall be reduced by the greater of the Gross Settlement Amount or the amount that represents the proportionate share of fault that is attributable to Russell, if any, with respect to the judgment.

## ARTICLE 3

## SETTLEMENT ADMINISTRATION

3.1 CAFA Notice. No later than ten (10) calendar days after the Named Plaintiffs' filing of this Settlement Agreement and motion for entry of the Preliminary Approval Order with the Court, the Settlement Administrator shall provide appropriate notice of this Settlement Agreement to the Attorney General of the United States and to the Attorneys General of all states in which Settlement Class Members reside, as specified in 28 U.S.C. § 1715(b), based on the best reasonably available information then available to the Settlement Administrator. If later-received recordkeeper data materially changes the states in which Settlement Class Members are understood to reside or otherwise makes supplemental notice reasonably necessary, the Settlement Administrator shall use reasonable efforts to provide supplemental CAFA notice within ten (10) business days after receiving and validating such data. The costs of such notice shall be considered an Administrative Expense. Upon completing such notice, the Settlement Administrator shall provide written notice to Class Counsel and Russell's Counsel.

3.2 Notice to Settlement Class Members.

(a) Subject to the Confidentiality Order, the Named Plaintiffs shall, upon timely request of the Settlement Administrator, use reasonable efforts to request, facilitate, and obtain, from the Recordkeeper or any current or former recordkeeper or other available source reasonably believed to possess relevant Plan data, the names, email addresses, and last known mailing addresses, as they appear in such available records, for all Settlement Class Members, as well as a list of Participant Class Members and Former Participant Class Members, available beneficiary and alternate payee information, quarterly Plan balance data needed to calculate Average Settlement Scores, current account-status information, and any other information reasonably necessary for the purposes of disseminating the Notices to Settlement Class Members as provided in Section 3.2(b) below and implementing the Plan of Allocation under Article 5. The Settling Parties shall use reasonable efforts to provide any other readily accessible information that is reasonably and timely requested by the Settlement Administrator for these purposes. The Settling Parties acknowledge that the current Recordkeeper may maintain only current account-status information and limited late-Class-Period information, if any, and that one or more former recordkeepers, including Alight, may maintain some or all historical Class Period data.

(1) The Settlement Administrator shall be bound by the Confidentiality Order and any further non-disclosure, data-security, or transfer protocol jointly required by the Settling Parties, set forth in writing to the Settlement Administrator, including any protocol reasonably necessary to receive, maintain, validate, use, transmit, or destroy participant data obtained from a current or former recordkeeper or other source.

(2) The Settlement Administrator shall use the information and data provided by the Settling Parties, the Recordkeeper, any current or former recordkeeper, or any other source solely for the purpose of meeting its obligations as Settlement Administrator, and for no other purpose.

(3) The Settling Parties shall have equal access to information held by the Settlement Administrator given that such information is necessary to administer this Settlement; however, such information shall be kept in strict confidence by Class Counsel and subject to the Confidentiality Order.

(b) No later than forty-five (45) calendar days after the entry of the Preliminary Approval Order, or twenty (20) business days after the Settlement Administrator has received and validated substantially complete notice data, whichever is later, or by such other deadline as specified by the Court, the Settlement Administrator shall send the Notices by email or, if no email address is available for a Settlement Class Member, by first-class mail, postage prepaid, or by such other means as the Court may order, to the Settlement Class Members; provided, however, that absent further order of the Court, the Settlement Administrator shall use reasonable efforts to complete the initial dissemination of the Notices no later than ninety (90) calendar days after entry of the Preliminary Approval Order.

(c) The Notices shall be in the form approved by the Court, which shall be in substantially the form attached as Exhibits 1 and 2 hereto.

(d) A Notice shall be sent to the email address on file with the Plan or, if none, the last known mailing address of each Settlement Class Member provided by the Recordkeeper, any current or former recordkeeper, or another available source, unless an updated address is obtained by the Settlement Administrator through reasonable efforts to verify or update the last known address before mailing.

(e) The Settlement Administrator shall use commercially reasonable efforts to locate any Settlement Class Member whose Notice is returned and mail such Notices to those Settlement Class Members one additional time.

(f) The Settlement Administrator shall post a copy of the Notices on the Settlement Website.

(g) For purposes of Sections 3.2, 3.4, and Article 5, data shall be deemed "substantially complete" when the Settlement Administrator reasonably determines that the available data is sufficient to disseminate notice, calculate Entitlement Amounts, or make distributions, as applicable, with reasonable accuracy, notwithstanding immaterial gaps or data issues that can be addressed through commercially reasonable validation, address updating,

reconciliation, reserves, supplemental notice, or the fallback procedures described in Section 5.1(d).

(h) If a current or former recordkeeper, including Alight, fails to respond, declines to provide data, provides incomplete data, or provides data that the Settlement Administrator reasonably cannot validate, the Settlement Administrator shall notify the Settling Parties within five (5) business days after making that determination. The Settling Parties shall use reasonable efforts to confer promptly regarding further reasonable efforts to request, facilitate, obtain, validate, supplement, or reconcile the data, including by seeking appropriate relief or guidance from the Court if necessary.

3.3 Settlement Website.

(a) No later than ten (10) calendar days after the entry of the Preliminary Approval Order, or by such other deadline as specified by the Court, the Settlement Administrator shall establish the Settlement Website. The Settlement Administrator shall maintain the Settlement Website until the later of one year after the Settlement Effective Date, sixty (60) calendar days after the receipt of the notice referenced in Section 5.5, or sixty (60) calendar days after completion of any supplemental notice, check reissuance, or final distribution activity arising from corrected or supplemental recordkeeper data, at which point the Settlement Administrator shall take down the Settlement Website.

(b) The Settlement Website shall contain a copy of the Notices and relevant case documents and all documents filed with the Court in connection with the Settlement. The Settlement Website may also include non-individualized updates regarding the status of Settlement administration, including any material delay caused by the need to obtain, validate, correct, or supplement recordkeeper data. No other information or documents will be posted on the Settlement Website unless agreed to in advance by the Settling Parties in writing.

(c) The Settlement Website shall also include a toll-free telephone number and mailing address through which Settlement Class Members may contact the Settlement Administrator directly.

3.4 Distribution of Net Settlement Amount. Within forty-five (45) calendar days of entry of the Final Approval Order, or within thirty (30) calendar days after the Settlement Administrator requests any supplemental information necessary to implement the Plan of Allocation, whichever is later, the Named Plaintiffs shall use reasonable efforts to request, facilitate, and obtain from the Recordkeeper, any current or former recordkeeper, or other available source all readily accessible information timely and reasonably requested by the Settlement Administrator that is necessary to implement the Plan of Allocation, to the extent not otherwise previously provided. If substantially complete implementation data is not received within sixty (60) calendar days after entry of the Final Approval Order, the Settlement Administrator shall provide a written status report to the Settling Parties identifying the missing or unresolved information and the proposed next steps. Thereafter, the Settlement Administrator shall distribute the Net Settlement Amount to Participant Class Members and Former Participant Class Members in accordance with the Plan of Allocation as described in Article 5 herein and any schedule approved by the Court.

3.5 Maintenance of Records. The Settlement Administrator shall maintain reasonably detailed records of its activities carried out under this Settlement Agreement. The Settlement Administrator shall maintain all such records as required by applicable law in accordance with its business practices and provide the same to Class Counsel and Russell's Counsel upon their request. The Settlement Administrator shall provide such information as may reasonably be requested by any of the Settling Parties relating to the administration of the Settlement Agreement.

3.6 No Liability. The Released Parties and Russell's Counsel shall have no responsibility for, interest in, or liability whatsoever, with respect to:

(a) any act, omission, or determination of the Settlement Administrator or any of its designees or agents;

(b) the determination of the Independent Fiduciary;

(c) any act, omission, or determination of another party or another party's counsel or designees or agents in connection with the administration of the Settlement Agreement;

(d) the Plan of Allocation or its implementation;

(e) the management, investment, or distribution of the Qualified Settlement Fund;

(f) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Qualified Settlement Fund or tax reporting, or the filing of any returns;

(g) any losses suffered by, or fluctuations in the value of, the Qualified Settlement Fund; or

(h) the determination, administration, calculation, verification, confirmation or payment of any Claims asserted against the Qualified Settlement Fund, including any good-faith reliance by the Settlement Administrator or Escrow Agent on participant, beneficiary, alternate payee, address, account-status, balance, tax, or other data received from the Settling Parties, the Recordkeeper, any current or former recordkeeper, or any other source used in accordance with this Settlement Agreement. Russell's responsibility with respect to the amounts to be paid pursuant to this Settlement Agreement is limited to its responsibility to cause payments to be made to the Qualified Settlement Fund as set forth in Section 4.2.

## ARTICLE 4

## ESTABLISHMENT OF QUALIFIED SETTLEMENT FUND

4.1 Establishment of the Qualified Settlement Fund. No later than ten (10) calendar days after entry of the Preliminary Approval Order, the Escrow Agent shall establish an escrow account. The Settling Parties agree that the escrow account is intended to be, and will be,

an interest-bearing Qualified Settlement Fund within the meaning of U.S. Department of Treasury Regulation § 1.468B-1 (26 C.F.R. § 1.468B-1). In addition, the Escrow Agent timely shall make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in 26 C.F.R. § 1.468B-1(j)(2)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to prepare and deliver, in a timely and proper manner, the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

4.2 Funding of the Qualified Settlement Fund. In consideration of all the promises and agreements set forth in the Settlement Agreement, Russell or its insurers will contribute the Gross Settlement Amount to the Qualified Settlement Fund no later than twenty (20) calendar days following the Settlement Effective Date and provision of necessary payment instructions, whichever is later.

4.3 Limitation on Funding Responsibility. Notwithstanding anything to the contrary in this Settlement Agreement, in no event shall Russell or its insurer(s) be required to make payments or incur any expenses in excess of the Gross Settlement Amount. The Gross Settlement Amount shall be the only amount paid by Russell and/or its insurer(s) under this Settlement Agreement, and Russell and its insurer(s) shall not be obligated to make any other payments under this Settlement Agreement or in connection with this Settlement including but not limited to any payments that the Named Plaintiffs or Settlement Class Members may claim they are entitled to under the Plan as a result of this Settlement.

4.4 Qualified Settlement Fund Administrator. For the purpose of § 468B of the Internal Revenue Code of 1986, as amended (26 U.S.C. § 468B) and the regulations promulgated thereunder, the administrator of the Qualified Settlement Fund shall be the Escrow Agent. The Escrow Agent, or the Settlement Administrator on its behalf, shall timely and properly cause to be filed all informational and other tax returns necessary or advisable with respect to the Gross Settlement Amount (including without limitation applying for a taxpayer identification number for the Qualified Settlement Fund and filing the returns described in 26 C.F.R. § 1.468B-2(k)). Such returns, as well as the election described in Section 4.1, shall be consistent with this Article and, in all events, shall reflect that all taxes (including any estimated taxes, interest, or penalties) on the income earned by the Gross Settlement Amount shall be deducted and paid from the Gross Settlement Amount as described in Section 4.6 herein.

4.5 Investment of the Qualified Settlement Fund. The Escrow Agent shall invest the Qualified Settlement Fund in short-term United States agency or Treasury securities or other instruments backed by the full faith and credit of the United States Government or an agency thereof, or fully insured by the United States Government or an agency thereof, and shall reinvest the proceeds of these investments as they mature in similar instruments at their then-current market rates.

4.6 Taxes on the Income of the Qualified Settlement Fund. All (1) taxes (including any estimated taxes, interest, or penalties) on any income of the Qualified Settlement Fund, including any taxes or tax detriments that may be imposed upon Russell or Russell's Counsel with respect to any income of the Gross Settlement Amount for any period during which the Gross

Settlement Amount does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (2) all expenses and costs incurred in connection with the taxation of the Qualified Settlement Fund (including, without limitation, expenses of tax attorneys and accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Article 4) are Administrative Expenses and shall be timely paid by the Escrow Agent out of the Qualified Settlement Fund. The Escrow Agent, or the Settlement Administrator on its behalf, shall be responsible for making provision for the payment from the Qualified Settlement Fund of all taxes and tax expenses, if any, owed with respect to the Qualified Settlement Fund and for all tax reporting, remittance, and/or withholding obligations, if any, for amounts distributed from it. Russell, Russell's Counsel, and Class Counsel have no responsibility or any liability for any taxes or tax expenses owed by, or any tax reporting or withholding obligations, if any, of the Qualified Settlement Fund. The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any Settlement Class Member any funds necessary to pay such amounts, including the establishment of adequate reserves for any taxes and tax expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)); neither Russell, Russell's Counsel, nor Class Counsel are responsible nor shall they have any liability therefor. The Settling Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Article 4.

4.7 The Escrow Agent shall not disburse the Qualified Settlement Fund or any portion except as provided in this Settlement Agreement, in an order of the Court, or in a subsequent written stipulation between Class Counsel and Russell's Counsel. Subject to the orders of the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Settlement Agreement.

4.8 After the Settlement Effective Date, the Gross Settlement Amount will be distributed from the Qualified Settlement Fund as follows: First, within twenty-one (21) calendar days of the Settlement Effective Date, all Administrative Expenses approved by the Court shall be paid. Second, within sixty (60) calendar days of the Settlement Effective Date, (a) any Service Award approved by the Court shall be paid; and (b) all Attorneys' Fees and Costs approved by the Court shall be paid to Class Counsel. Third, the Net Settlement Amount will be distributed pursuant to the Plan of Allocation and the timing set forth in Article 5, as such timing may be affected by the receipt, validation, correction, or supplementation of recordkeeper data or by further order of the Court. Pending final distribution of the Net Settlement Amount in accordance with the Plan of Allocation, the Escrow Agent will maintain the Qualified Settlement Fund.

4.9 No later than February 15 of the year following the calendar year in which a transfer to the Qualified Settlement Fund is made pursuant to the terms of this Article 4, the party making such transfer or its agents shall timely furnish a statement to the Escrow Agent, or the Settlement Administrator on its behalf, that complies with Treas. Reg. § 1.468B-3(e)(2), which may be a combined statement under Treas. Reg. § 1.468B-3(e)(2)(ii), and shall attach a copy of the statement to their federal income tax returns filed for the taxable year in which that party or its agents make a transfer to the Qualified Settlement Fund.

# ARTICLE 5

## PLAN OF ALLOCATION

5.1 Calculation of Payments to Participant Class Members and Former Participant Class Members. Payments to each Participant Class Member and Former Participant Class Member shall be calculated by the Settlement Administrator as follows, based on information provided by the Recordkeeper, any current or former recordkeeper, or other available source used in accordance with this Settlement Agreement:

(a) For each Participant Class Member and Former Participant Class Member, the Settlement Administrator shall determine an Average Settlement Score, defined as follows:

> Each Participant Class Member's and Former Participant Class Member's average, aggregate Plan balance at the end of each quarter for the period from August 1, 2017, through December 17, 2021.[1]

(b) The Settlement Administrator shall determine each Participant Class Member's and Former Participant Class Member's Entitlement Amount by calculating each individual's pro rata share of the Net Settlement Amount, based on his or her Average Settlement Score compared to the sum of all Participant Class Members' and Former Participant Class Members' Average Settlement Scores. If the dollar amount of the settlement payment to a Former Participant Class Member is calculated by the Settlement Administrator to be less than $20.00, then that Former Participant Class Member's pro-rata share shall be considered de minimis and be zero for all purposes, and his or her share shall be reallocated among the other Settlement Class Members on a pro rata basis.

(c) The aggregate of all Entitlement Amounts may not exceed the Net Settlement Amount. In the event that the Settlement Administrator determines that aggregate monetary payment pursuant to the Plan of Allocation would exceed the Net Settlement Amount, the Settlement Administrator is authorized to make such pro rata changes as are necessary to ensure that the aggregate monetary payment pursuant to the Plan of Allocation does not exceed the Net Settlement Amount.

---

[1] Mathematically stated, the Average Settlement Score shall be calculated as follows:

(Q3 2017 Plan balance * (61/92)) + (Q4 2017 Plan balance) + (Q1 2018 Plan balance) + (Q2 2018 Plan balance) + (Q3 2018 Plan balance) + (Q4 2018 Plan balance) + (Q1 2019 Plan balance) + (Q2 2019 Plan balance) + (Q3 2019 Plan balance) + (Q4 2019 Plan balance) + (Q1 2020 Plan balance) + (Q2 2020 Plan balance) + (Q3 2020 Plan balance) + (Q4 2020 Plan balance) + (Q1 2021 Plan balance) + (Q2 2021 Plan balance) + (Q3 2021 Plan balance) + (Q4 2021 Plan balance * (77/92)

Divided by

17.5 quarters during the Class Period.

(d) If data necessary to calculate an Average Settlement Score or Entitlement Amount is incomplete, inconsistent, or unavailable after the Settling Parties and the Settlement Administrator have used the efforts described in Sections 3.2 and 3.4, the Settlement Administrator may use a reasonable hierarchy of available data sources, including records from any current or former recordkeeper, Plan or administrative records made available to the Settlement Administrator, records produced in the Action, participant-supplied corrections, and reasonable estimates approved by the Settling Parties or the Court, provided that no estimate shall be used unless the Settlement Administrator documents the data gap and the methodology used to address it.

(e) The Settlement Administrator may make rolling distributions to Settlement Class Members whose Entitlement Amounts and payment information have been validated and may maintain reasonable reserves from the Qualified Settlement Fund for unresolved data issues, disputed or corrected Entitlement Amounts, supplemental notice, tax withholding, check reissuance, and Administrative Expenses, subject to the Plan of Allocation and any order of the Court.

5.2 Payments to Participant Class Members.

(a) Upon completing the calculation of each Participant Class Member's and Former Participant Class Member's Entitlement Amount and no later than the later of sixty (60) calendar days following the Settlement Effective Date or thirty (30) business days after the Settlement Administrator receives and validates substantially complete allocation data, the Settlement Administrator shall provide the Settling Parties and the Recordkeeper information in a mutually agreeable format concerning each Participant Class Member's Entitlement Amount, and any other information requested by Plan fiduciaries or the Recordkeeper as necessary to effectuate this Article. Before finalizing the information to be provided under this Section 5.2(a), the Settlement Administrator may provide a draft entitlement file to the Settling Parties and, to the extent practicable, request that the Recordkeeper review current account-status information for a period not to exceed ten (10) business days.

(b) No later than thirty (30) calendar days after completing the steps described in Section 5.2(a), or after completion or expiration of any Recordkeeper review period described in Section 5.2(a), whichever is later, and upon written notice to the Settling Parties and the Recordkeeper, the Settlement Administrator shall transfer from the Qualified Settlement Fund to the Plan all monetary payments payable to Participant Class Members whose Entitlement Amounts and current account information have been validated, with a request that the Recordkeeper thereafter credit the individual Plan account of each such Participant Class Member in an amount equal to that individual's Entitlement Amount. Material corrections to recordkeeper data after such transfer shall be addressed for affected individuals, and shall not require delaying or reopening distributions to unaffected Settlement Class Members unless the Settlement Administrator determines that the correction is systemic or the Court orders otherwise.

(c) The Settlement Administrator shall request that each Participant Class Member's Entitlement Amount be invested in accordance with and in proportion to such Participant Class Member's investment elections then on file for new contributions to his or her Plan account. If the Participant Class Member does not have an investment election on file, then

the Settlement Administrator shall request that the Recordkeeper invest such Participant Class Member's Entitlement Amount in the Plan's qualified default investment alternative, as defined in 29 C.F.R. § 2550.404c-5, and such individual shall be deemed to have directed his or her Entitlement Amount to be so invested.

(d) If, as of the date on which the Recordkeeper credits the individual Plan account of each Participant Class Member with his or her Entitlement Amount, an individual believed to be a Participant Class Member no longer has a Plan account balance greater than $0.00, he or she will be treated as a Former Participant Class Member for the purpose of the settlement distribution only and will receive his or her payment from the Settlement Administrator in the form of a check as described in Section 5.3(a). Within twenty (20) business days after the Recordkeeper notifies the Settlement Administrator that an Entitlement Amount could not be credited to a Participant Class Member's Plan account, the Settlement Administrator shall request from the Recordkeeper a transfer of Entitlement Amounts corresponding to such Participant Class Members without Plan account balances greater than $0.00 to the Settlement Administrator for distribution in accordance with Section 5.3(a). Alternatively, the Recordkeeper may elect to distribute the Entitlement Amounts directly to any such Class Member pursuant to the Plan's distribution rules. The Settlement Administrator shall use reasonable efforts to reconcile unmatched, closed, zero-balance, deceased, beneficiary, and alternate payee records before issuing any such payment by check.

5.3 Payments to Former Participant Class Members.

(a) Upon completing the calculation of each Participant Class Member and Former Participant Class Member's Entitlement Amount and no later than the later of ninety (90) calendar days following the Settlement Effective Date or thirty (30) business days after the Settlement Administrator validates substantially complete Former Participant Class Member data, the Settlement Administrator shall issue a check from the Qualified Settlement Fund to each Former Participant Class Member whose Entitlement Amount and mailing information have been validated, in the amount of each Former Participant Class Member's Entitlement Amount (less any withholdings) so long as the Entitlement Amount is not less than $20.00. The Settlement Administrator may issue checks on a rolling basis for Former Participant Class Members whose Entitlement Amounts and mailing information have been validated while continuing reasonable efforts to resolve data issues for other Former Participant Class Members.

5.4 Payments to Beneficiaries and Alternate Payees.

(a) Beneficiaries of Participant Class Members that are entitled to receive all or a portion of a Participant Class Member's Entitlement Amount under this Article shall receive such settlement payments pursuant to the terms of the Plan. Beneficiaries of Former Participant Class Members that are entitled to receive all or a portion of a Former Participant Class Member's Entitlement Amount under this Article will receive such settlement payments under the methods described in Section 5.3 for Former Participant Class Members.

(b) Alternate Payees of Participant Class Members that are entitled to receive all or a portion of a Participant Class Member's Entitlement Amount under this Article shall receive such settlement payments pursuant to the terms of the applicable QDRO. Alternate

Payees of Former Participant Class Members that are entitled to receive all or a portion of a Former Participant Class Member's Entitlement Amount under this Article will receive such settlement payments under the methods described in Section 5.3 for Former Participant Class Members.

(c) The Settlement Administrator shall have sole and final discretion to determine the amounts to be paid to Beneficiaries and Alternate Payees in accordance with the Plan of Allocation set forth in this Article and as ordered by the Court.

5.5 Notice of Completion of Plan of Allocation. Within ten (10) business days of completing all aspects of the Plan of Allocation, the Settlement Administrator shall, upon request, send to the Settling Parties one or more affidavits stating the following: (a) the name of each Settlement Class Member to whom the Settlement Administrator sent the Notices, and the address of such mailing; (b) the date(s) upon which the Settlement Administrator sent the Notices; (c) the name of each Settlement Class Member whose Notice was returned as undeliverable; (d) the efforts made by the Settlement Administrator to find the correct address and to deliver the Notice for each such Settlement Class Member; (e) the name of each Settlement Class Member to whom the Settlement Administrator made a distribution from the Net Settlement Amount, together with the amount and form of the distribution, the name of the payee, the date of distribution, the amount of tax withholdings, if applicable, and the date of remittance of tax withholdings to the appropriate tax authority, if applicable; and (f) a summary of any material recordkeeper data issues, supplemental notice, fallback methodology, reserve, reissuance, or correction process used in implementing the Plan of Allocation. If any material recordkeeper data issue remains unresolved more than thirty (30) calendar days after the first distribution, the Settlement Administrator shall provide periodic status reports to the Settling Parties every thirty (30) calendar days until such issue is resolved or the Court orders otherwise.

5.6 Expiration of Checks and Disbursement of Undistributed Monies from the Qualified Settlement Fund.

(a) All checks issued in accordance with the Plan of Allocation shall be mailed to the address of each Settlement Class Member (or his or her Beneficiary or Alternate Payee) provided by the Recordkeeper, any current or former recordkeeper, another available source, or any updated address obtained by the Settlement Administrator through reasonable efforts.

(b) All checks issued in accordance with the Plan of Allocation that are not cashed within one hundred twenty (120) calendar days of issuance shall be void and shall revert to the Qualified Settlement Fund; provided, however, that if the Settlement Administrator obtains an updated address or corrected payee information before final residual distribution, the Settlement Administrator may reissue such check, and the one hundred twenty (120) calendar day period shall run from the date of reissuance. The voidance of checks shall have no effect on Settlement Class Members' release of Claims, obligations, representations, or warranties as provided herein, which shall remain in full effect. Any amounts that revert to the Qualified Settlement Fund, and any funds that cannot be distributed to Settlement Class Members for any other reason, together with any interest earned on them, and after the payment of any applicable taxes by the Escrow Agent, shall be paid to the Plan for the purpose of defraying administrative fees and expenses of the Plan or for other lawful purposes consistent with ERISA and the terms of the Plan; provided that such residual

transfer shall not occur until thirty (30) calendar days after the Settlement Administrator certifies completion of reasonable address-update, reissuance, and data-correction efforts. Except as provided in Section 9.2, no amount of the Qualified Settlement Fund will revert back to Russell or any of the Released Parties or Non-Settling Defendants.

5.7 Responsibility for Taxes.

(a) The Settling Parties acknowledge that any payments to Settlement Class Members may be subject to applicable tax laws. Russell, Russell's Counsel, Class Counsel, and the Named Plaintiffs will provide no tax advice to the Settlement Class Members and make no representation regarding the tax consequences of any of the settlement payments described in this Settlement Agreement.

(b) Each Settlement Class Member who receives a payment pursuant to the Settlement Agreement shall be fully and ultimately responsible for payment of any and all federal, state and local taxes resulting from or attributable to the payment received by such person. Each Settlement Class Member shall hold Russell, Russell's Counsel, the Released Parties, Class Counsel, and the Settlement Administrator harmless from (a) any tax liability, including without limitation penalties and interest, related in any way to payments or credits under the Settlement Agreement, and (b) the costs (including, without limitation, fees, costs and expenses of attorneys, tax advisors, and experts) of any proceedings (including, without limitation, any investigation, response, and/or suit), related to such tax liability.

5.8 Restorative Payments. The Net Settlement Amount to be allocated and distributed to the Former Participant Class Members and to the Plan for distribution to the Participant Class Members in accordance with the Plan of Allocation shall constitute "restorative payments" within the meaning of Revenue Ruling 2002-45 for all purposes.

## ARTICLE 6

## ATTORNEYS' FEES AND COSTS AND SERVICE AWARD

6.1 Attorneys' Fees and Costs. No later than fourteen (14) calendar days prior to the deadline provided in the Preliminary Approval Order for Settlement Class Members to object to the Settlement Agreement, Class Counsel may file an application with the Court for payment of reasonable Attorneys' Fees and Costs, and Administrative Expenses (other than those tax-related expenses automatically deducted pursuant to Section 4.6), to be deducted from the Gross Settlement Amount. Class Counsel's requested attorneys' fees shall not exceed one-third of the Gross Settlement Amount and the requested costs and administrative expenses shall be limited to the actual, reasonable, out-of-pocket expenses advanced in pursuing this Action. Notwithstanding anything herein, the Court's failure to approve, in whole or in part, any application for Attorneys' Fees and Costs, or Administrative Expenses, sought by Class Counsel shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination of the Settlement.

6.2 Service Award. No later than fourteen (14) calendar days prior to the deadline provided in the Preliminary Approval Order for Settlement Class Members to object to

the Settlement Agreement, Class Counsel may file an application with the Court for payment of a Service Award to the Named Plaintiffs in an amount not to exceed twenty thousand U.S. dollars (USD $20,000.00) each. Notwithstanding anything herein, the Court's failure to approve, in whole or in part, any application for a Service Award shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination of the Settlement.

## ARTICLE 7

## RELEASES AND COVENANT NOT TO SUE

7.1 Releases. Subject to Article 9 below, the obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition and settlement of any and all of Plaintiffs' Released Claims.

(a) Upon the Settlement Effective Date, the Named Plaintiffs and every Settlement Class Member on behalf of themselves, their heirs, executors, administrators, estates, successors, beneficiaries, agents, attorneys and assigns, and the Plan (subject to Independent Fiduciary approval as described in Section 2.2 herein), shall, with respect to each and every Plaintiffs' Released Claim, be deemed to fully, finally and forever release, waive, relinquish and forever discharge each and every Plaintiffs' Released Claim against any and all of the Released Parties, and forever shall be enjoined from prosecuting any such Plaintiffs' Released Claims, whether or not Settlement Class Members received the Notice, whether or not the Settlement Class Members received a payment in connection with this Settlement Agreement, whether or not such Settlement Class Members have submitted an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs or Service Award, and whether or not the objections or claims for distribution of such Settlement Class Members have been approved or allowed.

(b) Upon the Settlement Effective Date, Russell, on behalf of itself and its successors and assigns shall be deemed to fully, finally and forever release, waive, relinquish and forever discharge Russell's Released Claims, and forever shall be enjoined from prosecuting any such Claims.

(c) Nothing herein shall preclude any action to enforce the Settlement Agreement.

7.2 The Named Plaintiffs, Class Counsel, the Plan, or the Settlement Class Members may hereafter discover facts in addition to or different from those that they know or believe to be true with respect to the Plaintiffs' Released Claims. Such facts, if known by them, might have affected the decision to settle with Russell, or the decision to release, relinquish, waive, and discharge the Plaintiffs' Released Claims, or the decision of a Settlement Class Member not to object to the Settlement. Notwithstanding the foregoing, each Settlement Class Member and the Plan shall expressly, upon the Settlement Effective Date, be deemed to have, and by operation of the Final Approval Order, shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged any and all Plaintiffs' Released Claims, including Unknown Claims. The Settlement Class Members and the Plan acknowledge and shall be deemed by operation of the Final Approval Order to have acknowledged that the foregoing waiver was bargained for

separately and is a key element of the Settlement embodied in this Settlement Agreement of which this release is a part.

7.3 As of the Settlement Effective Date, the Named Plaintiffs, the Settlement Class Members, and the Plan (subject to Independent Fiduciary approval as described in Section 2.2 herein), acting individually or together, or in combination with others, shall not sue or seek to institute, maintain, prosecute, argue, or assert in any action or proceeding (including but not limited to a U.S. Department of Labor proceeding or an arbitration proceeding), any cause of action, demand, or claim adverse to Released Parties on the basis of, in connection with, relating to, or arising out of any of Plaintiffs' Released Claims.

7.4 Upon the Settlement Effective Date, the Named Plaintiffs, the Settlement Class Members, and the Plan shall be conclusively deemed to, and by operation of the Final Approval Order shall, settle, release, relinquish, waive and discharge any and all rights or benefits they may now have, or in the future may have, under any law relating to the releases of unknown Claims pertaining specifically to Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Also, the Named Plaintiffs, Settlement Class Members, and the Plan with respect to Plaintiffs' Released Claims shall, upon the Settlement Effective Date, waive any and all provisions, rights and benefits conferred by any law of any State or territory within the United States or any foreign country, or any principle of common law, which is similar, comparable or equivalent in substance to Section 1542 of the California Civil Code.

7.5 This Settlement Agreement does not in any way bar, limit, waive, or release any right by the Named Plaintiffs or any Settlement Class Member to assert and/or recover any moneys resulting from (a) any individual Claim for individual vested benefits brought pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) that are otherwise due under the terms of the Plan provided that such Claim is not based on any conduct described in Plaintiffs' Released Claims, or (b) any Claims asserted by the Named Plaintiffs and the Settlement Class against the Non-Settling Defendants in the Action, or (c) any rights or duties arising out of the Settlement Agreement.

## ARTICLE 8

## REPRESENTATIONS AND WARRANTIES

8.1 Settling Parties' Representations and Warranties. The Settling Parties represent and warrant as follows, and each acknowledges that they are relying on these representations and warranties in entering into the Settlement Agreement:

(a) they have carefully read the Settlement Agreement and understand its terms;

(b) they are voluntarily entering into the Settlement Agreement as a result of arm's-length negotiations, and that in executing this Settlement Agreement they are relying solely upon their own judgment, belief, and knowledge, and upon the advice and recommendations of their own counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters that relate in any way to the subject matter hereof;

(c) they have made such investigation of the facts pertaining to the subject matter of the Settlement Agreement as they deem necessary;

(d) Named Plaintiffs have not assigned or otherwise transferred any interest in any of the Plaintiffs' Released Claim against any Released Parties, and that Named Plaintiffs shall not assign or otherwise transfer any interest in any of the Plaintiffs' Released Claims; and

(e) Named Plaintiffs, on behalf of themselves and the Class, will have no surviving claims or causes of action against any of the Released Parties for any of the Plaintiffs' Released Claims, from and after the Settlement Effective Date;

(f) that they assume the risk of mistake as to facts or law; and

(g) they recognize that additional evidence may come to light, but they nevertheless desire to avoid the expense and uncertainty of litigation by entering into the Settlement Agreement.

8.2 Signatories' Representations and Warranties. The persons executing the Settlement Agreement represent that they have been duly authorized to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement in order to effectuate its terms.

## ARTICLE 9

## TERMINATION

9.1 The Settlement Agreement shall terminate at the election of any of the Settling Parties, and thereby become null and void with no further force or effect, if:

(a) pursuant to Section 2.2, (1) the Independent Fiduciary does not approve the release or the Settlement Agreement, or disapproves the release or the Settlement Agreement for any reason whatsoever, or Russell reasonably concludes that the Independent Fiduciary's approval does not include the determinations required by PTE 2003-39; and (2) the Settling Parties do not mutually agree to modify the terms of this Settlement Agreement to facilitate an approval by the Independent Fiduciary or the Independent Fiduciary's determinations required by PTE 2003-39;

(b) the Court declines to approve the Settlement Agreement or any material part of it;

(c) the Court declines to enter the Preliminary Approval Order or

materially modifies the contents of the Preliminary Approval Order submitted by Class Counsel;

(d) the Court declines to enter the Final Approval Order or materially modifies the contents of the Final Approval Order submitted by Class Counsel;

(e) the Court declines to enter the Bar Order or the Bar Order is modified such that it is not in substantially the same form and substance as described in Sections 1.6 and 2.4(g) (the Bar Order is a necessary, integral, and essential condition of Russell's agreement to resolve the Action); or

(f) the Final Approval Order is vacated, reversed, or modified in any material respect on any appeal or other review or in a collateral proceeding occurring prior to the Settlement Effective Date.

Notwithstanding anything herein, no order of the Court, or modification or reversal on appeal of any order of the Court, solely concerning Attorneys' Fees and Costs or any Service Award shall constitute grounds for termination of the Settlement Agreement.

9.2 Reversion to Prior Positions. If the Settlement Agreement is terminated in accordance with this Article, then the Settling Parties and Settlement Class Members will be restored to their respective positions immediately before the execution of the Settlement Agreement, this Action shall proceed in all respects as if the Settlement Agreement and any related orders had not been entered, any order entered by the Court pursuant to the terms of this Settlement Agreement, including any Bar Order, shall be treated as vacated *nunc pro tunc*. All funds deposited in the Qualified Settlement Fund, and any interest earned thereon, shall be returned to Russell, its agents, or its insurers pro rata based on their contributions to the Qualified Settlement Fund within thirty (30) calendar days after the Settlement Agreement is finally terminated or deemed null and void, except as provided for in Section 9.3. The fact of this Settlement Agreement and the terms contained herein shall not be admissible in any proceeding for any purpose, and the Settling Parties expressly and affirmatively reserve all Claims, remedies, defenses, arguments, and motions as to all Claims and requests for relief that might have been or might be later asserted in the Action.

9.3 In the event that the Settlement Agreement is terminated, Administrative Expenses incurred prior to the termination shall be paid first from the interest earned, if any, on the Qualified Settlement Fund. Administrative Expenses in excess of the interest earned on the Qualified Settlement Fund shall be split evenly and paid by Class Counsel, on the one hand, and Russell and/or its insurer(s), on the other hand.

## ARTICLE 10

## NO ADMISSION OF WRONGDOING

10.1 The Settlement Agreement, whether or not consummated, and any proceedings taken pursuant to it, is for settlement purposes only and entered into solely for the purpose of avoiding possible future expenses, burdens, or distractions of litigation, and Russell and the Released Parties deny any and all wrongdoing. Russell and the Released Parties specifically and expressly deny any and all liability in connection with any Claims which have been made or could have been made, or which are the subject matter of, arise from, or are

connected, directly or indirectly, with or related in any way to the Action, including, but not limited to, any violation of any federal or state law (whether statutory or common law), rule, or regulation, and Russell and the Released Parties deny that any violation of any such law, rule, or regulation has ever occurred.

10.2 The Settlement Agreement, whether or not consummated, and any negotiations, proceedings, or agreements relating to the Settlement Agreement, and any matters arising in connection with settlement negotiations, proceedings, or agreements:

(a) shall not be offered or received, in the Action or any other proceeding, against Russell or any of the Released Parties as evidence of, or be construed as or deemed to be evidence of, any presumption, concession, or admission by Russell or a Released Party of the truth of any fact alleged by the Named Plaintiffs or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation;

(b) shall not be offered or received, in the Action or any other proceeding, against Russell or any of the Released Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by Russell or any of the Released Parties;

(c) shall not be offered or received, in the Action or any other proceeding, against Russell or any of the Released Parties as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing attributable to them; and

(d) shall not be construed against Russell or any of the Released Parties as an admission or concession that the consideration to be given hereunder represents the amount which could or would have been recovered after trial of the Action or that the Named Plaintiffs or any Settlement Class Member suffered any losses or damages attributable to Russell or any of the Released Parties.

## ARTICLE 11

## MISCELLANEOUS

11.1 Exhibits Included. The exhibits to the Settlement Agreement are integral parts of this Settlement Agreement and are incorporated by reference as if set forth herein.

11.2 Cooperation. Class Counsel and Russell's Counsel agree to cooperate fully with one another in seeking Court entry of the Preliminary Approval Order and Final Approval Order. The Settling Parties and their counsel further agree to use reasonable efforts to cooperate with the Settlement Administrator, the Escrow Agent, and each other in connection with Settlement administration, including efforts to request, facilitate, obtain, validate, reconcile, correct, supplement, securely transmit, and use data reasonably necessary for the dissemination of the Notices, implementation of the Plan of Allocation, tax reporting, and distribution of the Net Settlement Amount.

11.3 Confidentiality. The Settling Parties and their counsel shall keep strictly confidential, and shall not disclose to any third party (except, as reasonably necessary, the Non-Settling Defendants on a confidential basis) the terms and conditions of this Settlement Agreement until such time as the Named Plaintiffs file their motion for preliminary approval of the Settlement.

11.4 Non-disparagement. The Settling Parties, their counsel, and their agents shall refrain from making derogatory or disparaging public comments or remarks regarding the Settlement, the Named Plaintiffs, the Settlement Class Members, Russell, and/or the Released Parties in connection with the Settlement.

11.5 Survival of Confidentiality Order. Nothing in this Settlement Agreement shall be construed as terminating the Confidentiality Order. The Settling Parties remain bound by the requirements of the Confidentiality Order.

11.6 Entire Agreement. This Settlement Agreement and all of the exhibits appended hereto constitute the entire agreement of the Settling Parties with respect to the subject matter of the Action and supersede any prior agreement, whether written or oral, as to that subject matter. No representations or inducements have been made by any Settling Party hereto concerning the Settlement Agreement or its exhibits other than those contained and memorialized in such documents. The provisions of the Settlement Agreement and its exhibits may not be modified or amended, nor may any of their provisions be waived, except by a writing signed by all Settling Parties hereto or their successors-in-interest.

11.7 Waiver. The waiver by any Settling Party of a breach of the Settlement Agreement by any other Settling Party shall not be deemed a waiver of any other breach of the Settlement Agreement.

11.8 Construction of Agreement. This Settlement Agreement shall be construed to effectuate the intent of the Parties to resolve all disputes encompassed by the Agreement. All Settling Parties have participated in the drafting of this Agreement, and any ambiguity shall not be resolved by virtue of a presumption in favor of any Settling Party. This Settlement Agreement shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that the Settlement Agreement, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that the Settlement Agreement is the result of arm's-length negotiations between the Settling Parties, and all Settling Parties have contributed substantially and materially to its preparation.

11.9 Headings. The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

11.10 Governing Law. The Settlement Agreement and all documents necessary to effectuate it shall be governed by the laws of Nevada without regard to its conflict of law doctrines, except to the extent that federal law requires that federal law govern, and except that all computations of time with respect to the Settlement Agreement shall be governed by Federal Rule of Civil Procedure 6.

11.11 Disputes Concerning Compliance with Settlement Agreement. The Settling Parties agree that any and all disputes concerning compliance with the Settlement Agreement shall be exclusively resolved as follows:

(a) If a Settling Party has reason to believe that a legitimate dispute exists concerning the Settlement Agreement, the party raising the dispute shall first promptly give written notice under the Settlement Agreement to the other parties including in such notice: (a) a reference to all specific provisions of the Settlement Agreement that are involved; (b) a statement of the alleged non-compliance; and (c) a brief statement of the specific facts, circumstances, and any other arguments supporting the position of the party raising the dispute;

(b) Within ten (10) business days after receiving the notice described in Section 11.11(a), each receiving party shall respond in writing with its position and the facts and arguments it relies on in support of its position;

(c) For a period of not more than ten (10) business days following mailing of the response described in Section 11.11(b), the Settling Parties shall undertake good-faith negotiations, which may include meeting in person or conferring by telephone, to attempt to resolve the dispute;

(d) If the dispute is not resolved during the period described in Section 11.11(c), any party may request that the Court resolve the dispute;

(e) In connection with any disputes concerning compliance with the Settlement Agreement, the Settling Parties agree that each party shall bear its own fees and costs unless the Court orders otherwise.

(f) Notwithstanding the foregoing, if the Settlement Administrator or any Settling Party reasonably determines that a dispute or uncertainty concerning recordkeeper data may affect the timing or accuracy of notice, allocation, distribution, tax reporting, or the Plan of Allocation, the Settlement Administrator or any Settling Party may request expedited guidance or relief from the Court after providing prompt written notice to the Settling Parties and a reasonable opportunity to confer, unless exigent circumstances require earlier Court involvement.

11.12 Personal Jurisdiction. The Settling Parties agree that the Court has personal jurisdiction over the Named Plaintiffs, Settlement Class Members, and Russell, and shall retain that jurisdiction for purposes of enforcing the Settlement Agreement and resolving any disputes concerning compliance with the Settlement Agreement.

11.13 Fees and Expenses. Except as otherwise expressly set forth herein, each Settling Party shall pay its own fees, costs, and expenses incurred in connection with the Action, including fees, costs, and expenses incident to the negotiation, preparation, or compliance with the Settlement Agreement, and including any fees, expenses, and disbursements of its counsel and other advisors. Nothing in the Settlement Agreement shall require Russell or any Released Party to pay any monies other than as expressly provided herein.

11.14 Execution in Counterparts. The Settlement Agreement may be executed in one or more counterparts and may be executed by electronic signature or facsimile signature. All

executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Settling Parties shall exchange among themselves signed counterparts.

11.15 Notices. Unless otherwise provided herein, any notice, demand, or other communication under the Settlement Agreement (other than Notices to Settlement Class Members or other notices provided at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and delivered by hand, sent by registered or certified mail postage prepaid, or delivered by reputable express overnight courier as follows:

(a) if to the Named Plaintiffs:

Brock J. Specht
NICHOLS KASTER, PLLP
4700 IDS Center
80 S 8th Street
Minneapolis, MN 55402

(b) if to Russell:

Sean M. Murphy
Robert C. Hora
MILBANK LLP
55 Hudson Yards
New York, NY 10001

11.16 Retention of Jurisdiction. The Settling Parties shall request that the Court retain jurisdiction of this matter to resolve any disputes regarding interpretation of or compliance with the Settlement Agreement after the Settlement Effective Date and enter such orders as are necessary or appropriate to effectuate the terms of the Settlement Agreement.

AGREED TO ON BEHALF OF PLAINTIFFS Danny Wanek, Juan Duarte, and Rick Ruberton, individually, as class representatives on behalf of the Settlement Class.

Dated: November 10, 2026

By: ______________________
Brock J. Specht
NICHOLS KASTER, PLLP
4700 IDS Center 80 S 8th Street
Minneapolis, MN 55402
612-256-3200
bspecht@nka.com

*Attorney for Plaintiffs Danny Wanek, Juan Duarte, and Rick Ruberton and the Certified Class*

**EXECUTION COPY**

AGREED TO ON BEHALF OF RUSSELL INVESTMENTS TRUST COMPANY.

Dated: November 10, 2026

By: ______________________

Sean M. Murphy
Robert C. Hora
MILBANK LLP
55 Hudson Yards
New York, NY 10001
(212) 530-5000
smurphy@milbank.com
rhora@milbank.com

*Attorneys for Defendant Russell Investments Trust Company*

# EXHIBIT 1

**EXECUTION COPY**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

DANNY WANEK, JUAN DUARTE, AND RICK RUBERTON, as representatives of a class of similarly situated persons, and on behalf of the Caesars Entertainment Corporation Savings & Retirement Plan,

Plaintiffs,

v.

RUSSELL INVESTMENTS TRUST COMPANY, CAESARS HOLDINGS INC., THE PLAN INVESTMENT COMMITTEE, AND THE 401(K) PLAN COMMITTEE

Defendants

Case No. 2:21-cv-00961-CDS-BNW

**NOTICE OF CLASS ACTION SETTLEMENT AND FAIRNESS HEARING**

**PLEASE READ THIS SETTLEMENT NOTICE CAREFULLY.**
**This is a notice of a proposed partial class action settlement in the above-referenced lawsuit. Your legal rights may be affected if you are a member of the following Settlement Class:**

All participants and beneficiaries of the Caesars Entertainment Corporation Savings & Retirement Plan from August 1, 2017, through December 17, 2021 (referred to as the "Class Period"), excluding any employees of Caesars with responsibility for the Plan's investment or administrative functions:

- A partial Settlement has been reached that encompasses all claims against Russell Investments Trust Company ("Russell") in a class action lawsuit against Caesars Holdings Inc. and the Plan Investment Committee and the 401(k) Plan Committee (collectively, the "Non-Settling Defendants"), and Russell (collectively, "Defendants"). The class action lawsuit involves whether or not the Non-Settling Defendants and Russell complied with their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") with respect to the Caesars Entertainment Corporation Savings & Retirement Plan (the "Plan"). Russell denies all claims, and nothing in the Settlement is an admission or concession on Russell's part of any fault or liability whatsoever.

- The Settlement will provide, among other things, for a $14,800,000 Settlement Fund that will be allocated to eligible Settlement Class Members after any Court-approved deductions for Attorneys' Fees and Costs, Administrative Expenses, and Service Awards. Settlement Class Members with a positive balance in their Plan account as of the date of the Preliminary

Approval Order (referred to herein as "Participant Class Members") will automatically receive allocations directly to their Plan accounts so long as they maintain a positive balance through the time Settlement monies are distributed. Settlement Class Members who had a positive balance in their Plan account during the Class Period but who no longer have a Plan account or do not have a positive balance in their account as of the date of the Preliminary Approval Order (referred to herein as "Former Participant Class Members") will receive their settlement payment in the form of a check, except that any Former Participant Class Member whose payment would be less than $20.00 will not receive a payment in any amount.

- The terms and conditions of the Settlement are set forth in the Settlement Agreement dated November 10, 2026. Capitalized terms used in this Notice but not defined in this Notice have the meanings assigned to them in the Settlement Agreement. The Settlement Agreement is available at [www.settlementwebsite.com]. Certain other documents also will be posted on that website. You should visit that website if you would like more information about the Settlement or the lawsuit. All papers filed in this lawsuit are also available for review via the Public Access to Court Electronic Records System (PACER), at http://www.pacer.gov.

- Your rights and the choices available to you—and the applicable deadlines to act—are explained below. Please note that neither Russell nor any employees, attorneys, or representatives of Russell may advise you as to what the best choice is for you or how you should proceed.

- The Court still has to decide whether to give its final approval to the Settlement. Payments under the Settlement will be made only if the Court finally approves the Settlement, and that final approval is upheld in the event of any appeal.

- A Fairness Hearing will take place on [DATE], at [TIME], before the Honorable Cristina D. Silva, United States District Court for the District of Nevada, 333 Las Vegas Boulevard South, Courtroom 6B, Las Vegas, Nevada 89101, to determine whether to grant final approval of the Settlement and approve the requested Attorneys' Fees and Costs, Administrative Expenses, and Service Awards. If the Fairness Hearing is rescheduled, including because additional time is needed to obtain, validate, correct, or supplement recordkeeper data for notice or administration of the Settlement, or if it is held by video conference or telephone, a notice will be posted on the Settlement Website at [www.settlementwebsite.com].

- Any objections to the Settlement, or to the requested Attorneys' Fees and Costs, Administrative Expenses, or Service Awards, must be served in writing on Class Counsel and Russell's counsel, as identified on page 8 of this Settlement Notice, by the deadline set by the Court, which will be at least 21 calendar days before the Fairness Hearing, unless the Court orders otherwise.

| **YOUR LEGAL RIGHTS AND OPTIONS UNDER THE SETTLEMENT:** | |
|---|---|
| **OUR RECORDS INDICATE YOU ARE A PARTICIPANT CLASS MEMBER.** | Our records indicate that you are a Participant Class Member. You do not need to do anything to receive your share of the Net Settlement Amount. If, however, you are a Former Participant |

| | |
|---|---|
| **IF SO, YOU DO NOT NEED TO DO ANYTHING TO RECEIVE YOUR SHARE OF THE SETTLEMENT.** | Class Member who no longer has a Plan account with a positive balance, or are the beneficiary or alternate payee of a Former Participant Class Member, then you will receive your share of the Net Settlement Amount via check. |
| **YOU CAN OBJECT (NO LATER THAN [DATE])** | If you wish to object to any part of the Settlement, or to the requested Attorneys' Fees and Costs, Administrative Expenses, or Service Awards, you must submit your objection and any supporting documents to Class Counsel and Russell's counsel (as identified on page 8 below) by the deadline set by the Court, which will be at least 21 calendar days before the Fairness Hearing, unless the Court orders otherwise. The Court has authorized the parties to seek information through discovery from any person who files an objection, which means you could be required to produce documents and appear at a deposition to be interviewed and asked questions. |
| **YOU CAN ATTEND A HEARING ON [DATE]** | You may also attend the Fairness Hearing and speak at the Fairness Hearing on [DATE]. If you wish to attend the hearing and speak at the hearing, you must provide Class Counsel and Russell's counsel (as identified on page 8 below) with notice of your intent to appear by the deadline set by the Court, which will be at least 21 calendar days before the Fairness Hearing, unless the Court orders otherwise. Please note that you will not be permitted to make an objection to the Settlement if you do not comply with the requirements for making objections. |

## The Class Action

The case is called Wanek v. Russell Investments Trust Company, et al., Case No. 2:21-cv-00961-CDS-BNW (D. Nev.) (the "Action" or "lawsuit"). The individuals who brought this lawsuit are called the Class Representatives, and the persons who were sued are called the Defendants.

The Class Representatives are Danny Wanek, Juan Duarte, and Rick Ruberton. The Settling Defendant is Russell. The claims in the lawsuit are described below in Question 2, and additional information about them, including a copy of the operative Fifth Amended Complaint, is available at [www.settlementwebsite.com].

## The Settlement

Following negotiations between Class Counsel and Russell's counsel, a Settlement has been reached. As part of the Settlement, a Qualified Settlement Fund of $14,800,000 will be established to resolve the claims against Russell in the Action. The "Net Settlement Amount" is $14,800,000 minus any Administrative Expenses (including taxes, tax expenses and certain other

expenses) and any Court-approved Attorneys' Fees and Costs and Service Award. The Net Settlement Amount will be allocated to Settlement Class Members according to a Plan of Allocation to be approved by the Court and further described below.

**Statement of Attorneys' Fees and Costs, Administrative Expenses, and Service Award Sought in the Class Action**

Class Counsel has devoted many hours to investigating the facts, prosecuting the lawsuit, reviewing documents obtained from Defendants, and negotiating the Settlement. During that time, they also have advanced costs necessary to pursue the case. Class Counsel took the risk of litigation and have not been paid for any of their time or for any of these costs throughout the time this case has been pending.

The Settlement Agreement provides that Class Counsel may seek attorneys' fees not to exceed one-third of the Qualified Settlement Fund, along with reasonable out-of-pocket litigation costs and administrative expenses associated with the Settlement. Any attorneys' fees, costs and administrative expenses awarded by the Court will be paid from the Qualified Settlement Fund.

The Class Representatives have devoted many hours on behalf of the Settlement Class to providing information, communicating with counsel, answering discovery requests, sitting for depositions, and preparing to attend trial. Class Counsel will apply for a Service Award of $20,000 to be awarded to each of the Class Representatives for their service to the Settlement Class.

A full and formal application for Attorneys' Fees and Costs, Administrative Expenses, and Service Awards will be filed with the Court on or before [DATE]. This application will be made available at [www.settlementwebsite.com]. You may also obtain a copy of this application through the Public Access to Court Electronic Records System (PACER) at http://www.pacer.gov, or by appearing in person during regular business hours at the Office of the Clerk of the United States District Court for the District of Nevada, 333 Las Vegas Boulevard South, Las Vegas, NV 89101.

## 1. Why Did I Receive This Settlement Notice?

The Court caused this Notice to be sent to you because our records indicate that you may be a Participant Class Member. If you fall within the definition of the Settlement Class, you have a right to know about the Settlement and about all of the options available to you before the Court decides whether to give its final approval to the Settlement. If the Court approves the Settlement, and after any objections and appeals are resolved, the Net Settlement Amount will be allocated among Settlement Class Members according to a Court-approved Plan of Allocation.

## 2. What Is the Class Action About?

In the Class Action, the Class Representatives claim that the Defendants improperly selected and retained the Russell Funds for the Plan, and that it was not prudent or in the best interest of participants for them to do so. The Class Representatives also allege that Russell had a conflict of interest in selecting and retaining these funds or recommending their selection and retention.

The Defendants deny all claims and assert that they have always acted prudently and in the best interests of participants and beneficiaries.

## 3. Why Is There A Settlement?

The Settlement is the product of extensive negotiations between the Class Representatives, Russell, and their counsel. The parties to the Settlement have taken into account the uncertainty, risks, and costs of further litigation and have concluded that it is desirable to settle on the terms and conditions set forth in the Settlement Agreement. The Class Representatives and Class Counsel believe that the Settlement is best for the Settlement Class. Nothing in the Settlement Agreement is an admission or concession on Russell's part of any fault or liability whatsoever. The parties to the Settlement have entered into the Settlement Agreement to avoid the uncertainty, expense, and burden of additional litigation.

## 4. What Does the Settlement Provide?

Under the Settlement, Russell or its insurers will pay $14,800,000 into a Qualified Settlement Fund to resolve the claims of the Settlement Class against Russell. The Net Settlement Amount (after deduction of any Court-approved Attorneys' Fees and Costs, Administrative Expenses, and Service Awards) will be allocated to Settlement Class Members according to a Plan of Allocation to be approved by the Court (as explained further in Question 5 below). Allocations to Participant Class Members who are entitled to a distribution under the Plan of Allocation will be made into their existing accounts in the Plan. Former Participant Settlement Class Members who are entitled to a distribution will receive their distribution via check, except that any Former Participant Class Member whose payment would be less than $20.00 will not receive a payment in any amount.

All Settlement Class Members and anyone claiming through them will fully release Russell and the Released Parties from certain Plaintiffs' Released Claims, as defined in the Settlement Agreement. The Released Parties include Russell and certain related parties as outlined in the Settlement Agreement. The Plaintiffs' Released Claims include any claims against any of the Released Parties with respect to the Plan that were asserted in the Action against Russell or could have been asserted against Russell, including but not limited to those based on: (1) the selection, retention, or monitoring of the Russell Funds in the Plan's investment lineup; (2) the selection, retention, or monitoring of Russell; (3) the performance, fees, and other characteristics of the Russell Funds in the Plan's investment lineup; (4) Russell's performance as a fiduciary to the Plan or the fees charged to the Plan or its participants, or the services provided by Russell to the Plan or its participants; or (5) the restructuring or modification of the Plan's investment lineup. In addition, Plaintiffs' Released Claims also include certain other claims as set forth in the Settlement Agreement.

The Non-Settling Defendants are not Released Parties under the Settlement. However, it is a condition of the Settlement that the Court enter an order barring the Non-Settling Defendants from asserting certain claims against Russell and that any judgment that is later entered against the Non-Settling Defendants in the Action will be subject to a judgment reduction equal to the

amount that represents the greater of the Gross Settlement Amount or the proportionate share of fault that the Court attributes to Russell at trial, if any, with respect to the judgment.

This is only a summary of the Released Parties and Plaintiffs' Released Claims, and is not a binding description of either. The governing releases are found within the Settlement Agreement, which is available at [www.settlementwebsite.com].

## 5. How Much Will My Distribution Be?

The amount, if any, that will be allocated to you will be based upon available records maintained by the Plan's current or former recordkeepers, including available historical recordkeeper data, and any other records or information used in accordance with the Court-approved Plan of Allocation. Calculations regarding individual distributions will be performed by the Settlement Administrator, whose determinations will be final and binding, pursuant to the Court-approved Plan of Allocation.

To receive a distribution from the Net Settlement Amount, you must either be a (1) "Participant Class Member" as described on page 1; (2) a "Former Participant Class Member" as described on pages 1–2; or (3) a Beneficiary or Alternate Payee of a person identified in (1) or (2).

There are approximately XX,XXX Settlement Class Members. The Net Settlement Amount will be divided *pro rata* among Settlement Class Members (and their Beneficiaries and Alternate Payees) based on Settlement Class Members' average quarterly balances in the Plan during the Class Period, as calculated by the Settlement Administrator based on available data and any Court-approved fallback methodology described in the Settlement Agreement. If the dollar amount of the settlement payment to a Former Participant Class Member is calculated by the Settlement Administrator to be less than $20.00, then that Former Participant Class Member's pro-rata share shall be zero for all purposes, and his or her share shall be reallocated among the other Class Members. Class Members whose pro-rata shares are zero will still be bound by their release of claims. A more complete description regarding the details of the Plan of Allocation can be found in Article 5 of the Settlement Agreement, which is available at [www.settlementwebsite.com].

## 6. How Can I Receive My Distribution?

According to our records, you are a Participant Class Member. Therefore, you do not need to do anything to receive your share of the Settlement.

If you are considered a Participant Class Member because you had a Plan account with a balance greater than $0.00 as of DATE, but it is determined that you no longer have a Plan account balance greater than $0.00 when the Settlement proceeds are distributed to Settlement Class Members, the Settlement Administrator will mail you a check, or request that the Plan's Recordkeeper distribute payment under the Plan's distribution rules, for your share of the Net Settlement Amount to your last known address or any updated address obtained by the Settlement Administrator. You may contact the Settlement Administrator to confirm or update your mailing address. The Settlement Administrator may be contacted by phone at [telephone number] or by mail at [mailing address].

## 7. When Will I Receive My Distribution?

The timing of the distribution of the Net Settlement Amount is conditioned on several matters, including the Court's final approval of the Settlement, any approval becoming final and no longer subject to any appeals in any court, and the Settlement Administrator's receipt and validation of information needed to calculate and make distributions. An appeal of the final approval order may take several years. If the Settlement is approved by the Court, there are no appeals, and substantially complete recordkeeper data is timely received and validated, the Settlement distribution likely will occur within approximately four to six months of the Court's Final Approval Order, unless there are unforeseen circumstances. Distribution may take longer if historical recordkeeper data must be obtained, corrected, reconciled, or supplemented. There will be no payments under the Settlement if the Settlement Agreement is terminated.

## 8. Can I Get Out of The Settlement?

No. The Settlement Class has been certified under Federal Rule of Civil Procedure 23(b)(1). Therefore, as a Settlement Class Member, you are bound by the Settlement (if it receives final Court approval) and any judgments or orders that are entered in the Action. If you wish to object to any part of the Settlement, you may write to Class Counsel and Russell's counsel about why you object to the Settlement, as discussed below.

## 9. Do I Have A Lawyer in The Case?

The Court has appointed the law firm of Nichols Kaster, PLLP in Minneapolis, Minnesota as Class Counsel in the Class Action. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 10. How Will the Lawyers Be Paid?

Class Counsel has not been paid for any of the work they have done to date. The Settlement provides that Class Counsel may apply for an award of Attorneys' Fees not to exceed one-third of the Qualified Settlement Fund, along with Costs and Administrative Expenses, at least 14 days prior to the objection deadline. This motion will be considered at the Fairness Hearing. In addition, Class Counsel will seek Service Awards for the Class Representatives of no more than $20,000 each. The Court will determine the amount of attorneys' fees, costs, administrative expenses, and service awards that will be awarded, if any. All papers filed in this Action, including Class Counsel's motion for Attorneys' Fees and Costs and Administrative Expenses, will be available for review via the Public Access to Court Electronic Records System (PACER), available online at http://www.pacer.gov.

## 11. How Do I Tell the Court If I Don't Like the Settlement?

If you are a Settlement Class Member, you can object to the Settlement by mailing to Class Counsel and to Russell's counsel at the addresses below a written objection explaining why you object and any supporting documents, and your objection will, in turn, be provided to the Court.

**EXECUTION COPY**

Your written objection must: (1) clearly identify the case name and number: Wanek v. Russell Investments Trust Company, et al., Case No. 2:21-cv-00961-CDS-BNW; (2) include your full name, current address, and telephone number or email address; (3) describe the position you wish to assert, including the factual and legal grounds for the position; (4) provide copies of all documents that you wish to submit in support of your position; (5) provide the name(s), address(es) and phone number(s) of any attorney(s) representing you; and (6) include your signature. Your written objection and supporting documents must be mailed to Class Counsel and Russell's counsel no later than [deadline set by Court] to be considered. The Court will set a deadline that is at least 21 calendar days before the Fairness Hearing, unless the Court orders otherwise. Class Counsel and Russell will have an opportunity to respond to your objection. Please note that the Court's Order Granting Preliminary Approval of this Settlement provides that any party to the litigation may, but is not required to, serve discovery requests, including requests for documents and notice of deposition not to exceed two hours in length, on any objector. Any responses to discovery, or any depositions, must be completed within ten days of the request being served to the objector.

| CLASS COUNSEL | RUSSELL'S COUNSEL |
|---|---|
| Brock Specht<br>NICHOLS KASTER, PLLP<br>4700 IDS Center<br>80 South 8th Street<br>Minneapolis, MN 55402 | Sean M. Murphy<br>Robert C. Hora<br>MILBANK LLP<br>55 Hudson Yards<br>New York, NY 10001 |

## 12. When and Where Will the Court Decide Whether to Approve the Settlement?

The Court will hold a Fairness Hearing at [TIME] on [DATE], at the United States District Court for the District of Nevada, 333 Las Vegas Boulevard South, Las Vegas, NV 89101, in Courtroom 6B. At the Fairness Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court also will consider the motion for Attorneys' Fees and Costs, Administrative Expenses, and Service Awards. If there are objections, the Court will consider them then. Please note that if the Fairness Hearing is rescheduled, or if it is held by video conference or telephone, a notice will be posted on the Settlement Website at [www.settlementwebsite.com].

## 13. Do I Have to Attend the Fairness Hearing?

No, but you are welcome to come at your own expense. You may also make an appearance through an attorney. If you send an objection, you do not have to come to the Court to talk about it. As long as you mailed your written objection on time, the Court will consider it.

## 14. May I Speak at The Fairness Hearing?

Yes. If you wish to attend the hearing and speak at the hearing, you must serve Class Counsel and Russell's counsel (as identified on page 8) with a notice of intent to appear by the deadline set by the Court, which will be at least 21 calendar days before the Fairness Hearing, unless the

Court orders otherwise. You must also comply with the requirements for making an objection (described above) if you wish to object to the Settlement.

## 15. What Happens If I Do Nothing at All?

**If you are a "Participant Class Member" as described on page 1, and you do nothing, you will receive your *pro rata* share of the Net Settlement Amount if the Settlement is finally approved**. If you are a "Former Participant Class Member" as described on pages 1–2, and you do nothing, you will receive your *pro rata* share of the Net Settlement Amount via check.

## 16. How Do I Get More Information?

If you have questions regarding the Settlement, you can visit [www.settlementwebsite.com], call [phone number], or write to the Settlement Administrator at [mailing address]. All papers filed in this lawsuit are also available for review via the Public Access to Court Electronic Records System (PACER), at http://www.pacer.gov, and can be reviewed in person during regular business hours at the Office of the Clerk of the United States District Court for the District of Nevada, 333 Las Vegas Boulevard South, Las Vegas, NV 89101. Please note that neither Russell nor any employees, attorneys, or representatives of Russell may advise you regarding the Settlement or how you should proceed.

# EXHIBIT 2

**EXECUTION COPY**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

DANNY WANEK, JUAN DUARTE, AND RICK RUBERTON, as representatives of a class of similarly situated persons, and on behalf of the Caesars Entertainment Corporation Savings & Retirement Plan,

Plaintiffs,

v.

RUSSELL INVESTMENTS TRUST COMPANY, CAESARS HOLDINGS INC., THE PLAN INVESTMENT COMMITTEE, AND THE 401(K) PLAN COMMITTEE

Defendants

Case No. 2:21-cv-00961-CDS-BNW

**NOTICE OF CLASS ACTION SETTLEMENT AND FAIRNESS HEARING**

**PLEASE READ THIS SETTLEMENT NOTICE CAREFULLY.**
**This is a notice of a proposed partial class action settlement in the above-referenced lawsuit. Your legal rights may be affected if you are a member of the following Settlement Class:**

All participants and beneficiaries of the Caesars Entertainment Corporation Savings & Retirement Plan from August 1, 2017, through December 17, 2021 (referred to as the "Class Period"), excluding any employees of Caesars with responsibility for the Plan's investment or administrative functions:

- A partial Settlement has been reached that encompasses all claims against Russell Investments Trust Company ("Russell") in a class action lawsuit against Caesars Holdings Inc. and the Plan Investment Committee and the 401(k) Plan Committee (collectively, the "Non-Settling Defendants"), and Russell (collectively, "Defendants"). The class action lawsuit involves whether or not the Non-Settling Defendants and Russell complied with their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") with respect to the Caesars Entertainment Corporation Savings & Retirement Plan (the "Plan"). Russell denies all claims, and nothing in the Settlement is an admission or concession on Russell's part of any fault or liability whatsoever.

- The Settlement will provide, among other things, for a $14,800,000 Settlement Fund that will be allocated to eligible Settlement Class Members after any Court-approved deductions for Attorneys' Fees and Costs, Administrative Expenses, and Service Awards. Settlement Class Members with a positive balance in their Plan account as of the date of the Preliminary

Approval Order (referred to herein as "Participant Class Members") will automatically receive allocations directly to their Plan accounts so long as they maintain a positive balance through the time Settlement monies are distributed. Settlement Class Members who had a positive balance in their Plan account during the Class Period but who no longer have a Plan account or do not have a positive balance in their account as of the date of the Preliminary Approval Order (referred to herein as "Former Participant Class Members") will receive their settlement payment in the form of a check, except that any Former Participant Class Member whose payment would be less than $20.00 will not receive a payment in any amount.

- The terms and conditions of the Settlement are set forth in the Settlement Agreement dated November 10, 2026. Capitalized terms used in this Notice but not defined in this Notice have the meanings assigned to them in the Settlement Agreement. The Settlement Agreement is available at [www.settlementwebsite.com]. Certain other documents also will be posted on that website. You should visit that website if you would like more information about the Settlement or the lawsuit. All papers filed in this lawsuit are also available for review via the Public Access to Court Electronic Records System (PACER), at http://www.pacer.gov.

- Your rights and the choices available to you—and the applicable deadlines to act—are explained in this Notice. Please note that neither Russell nor any employees, attorneys, or representatives of Russell may advise you as to what the best choice is for you or how you should proceed.

- The Court still has to decide whether to give its final approval to the Settlement. Payments under the Settlement will be made only if the Court finally approves the Settlement, and that final approval is upheld in the event of any appeal.

- A Fairness Hearing will take place on [DATE], at [TIME], before the Honorable Cristina D. Silva, United States District Court for the District of Nevada, 333 Las Vegas Boulevard South, Courtroom 6B, Las Vegas, Nevada 89101, to determine whether to grant final approval of the Settlement and approve the requested Attorneys' Fees and Costs, Administrative Expenses, and Service Awards. If the Fairness Hearing is rescheduled, including because additional time is needed to obtain, validate, correct, or supplement recordkeeper data for notice or administration of the Settlement, or if it is held by video conference or telephone, a notice will be posted on the Settlement Website at [www.settlementwebsite.com].

- Any objections to the Settlement, or to the requested Attorneys' Fees and Costs, Administrative Expenses, or Service Awards, must be served in writing on Class Counsel and Russell's counsel, as identified on page 8 of this Settlement Notice, by the deadline set by the Court, which will be at least 21 calendar days before the Fairness Hearing, unless the Court orders otherwise.

| YOUR LEGAL RIGHTS AND OPTIONS UNDER THE SETTLEMENT: | |
|---|---|
| **OUR RECORDS INDICATE YOU ARE A <u>FORMER PARTICIPANT CLASS MEMBER.</u>** | <u>Our records indicate that you are a Former Participant Class Member.</u> You do not need to do anything to receive your share of the Net Settlement Amount by check, except that if your |

| | |
|---|---|
| **IF SO, YOU WILL RECEIVE YOUR SHARE OF THE SETTLEMENT BY CHECK** | payment would be less than $20.00, you will not receive a payment in any amount. |
| **YOU CAN OBJECT (NO LATER THAN [DATE])** | If you wish to object to any part of the Settlement, or to the requested Attorneys' Fees and Costs, Administrative Expenses, or Service Awards, you must submit your objection and any supporting documents to Class Counsel and Russell's counsel (as identified on page 8 below) by the deadline set by the Court, which will be at least 21 calendar days before the Fairness Hearing, unless the Court orders otherwise. The Court has authorized the parties to seek information through discovery from any person who files an objection, which means you could be required to produce documents and appear at a deposition to be interviewed and asked questions. |
| **YOU CAN ATTEND A HEARING ON [DATE]** | You may also attend the Fairness Hearing and speak at the Fairness Hearing on [DATE]. If you wish to attend the hearing and speak at the hearing, you must provide Class Counsel and Russell's counsel (as identified on page 8 below) with notice of your intent to appear by the deadline set by the Court, which will be at least 21 calendar days before the Fairness Hearing, unless the Court orders otherwise. Please note that you will not be permitted to make an objection to the Settlement if you do not comply with the requirements for making objections. |

## The Class Action

The case is called *Wanek v. Russell Investments Trust Company, et al.*, Case No. 2:21-cv-00961-CDS-BNW (D. Nev.) (the "Action" or "lawsuit"). The individuals who brought this lawsuit are called the Class Representatives, and the persons who were sued are called the Defendants.

The Class Representatives are Danny Wanek, Juan Duarte, and Rick Ruberton. The Settling Defendant is Russell. The claims in the lawsuit are described below in Question 2, and additional information about them, including a copy of the operative Fifth Amended Complaint, is available at [www.settlementwebsite.com].

## The Settlement

Following negotiations between Class Counsel and Russell's counsel, a Settlement has been reached. As part of the Settlement, a Qualified Settlement Fund of $14,800,000 will be established to resolve the claims against Russell in the Action. The "Net Settlement Amount" is $14,800,000 minus any Administrative Expenses (including taxes, tax expenses and certain other expenses) and any Court-approved Attorneys' Fees and Costs and Service Award. The Net

Settlement Amount will be allocated to Settlement Class Members according to a Plan of Allocation to be approved by the Court and further described below.

**Statement of Attorneys' Fees and Costs, Administrative Expenses, and Service Award Sought in the Class Action**

Class Counsel has devoted many hours to investigating the facts, prosecuting the lawsuit, reviewing documents obtained from Defendants, and negotiating the Settlement. During that time, they also have advanced costs necessary to pursue the case. Class Counsel took the risk of litigation and have not been paid for any of their time or for any of these costs throughout the time this case has been pending.

The Settlement Agreement provides that Class Counsel may seek attorneys' fees not to exceed one-third of the Qualified Settlement Fund, along with reasonable out-of-pocket litigation costs and administrative expenses associated with the Settlement. Any attorneys' fees, costs, and administrative expenses awarded by the Court will be paid from the Qualified Settlement Fund.

The Class Representatives have devoted many hours on behalf of the Settlement Class to providing information, communicating with counsel, answering discovery requests, sitting for depositions, and preparing to attend trial. Class Counsel will apply for a Service Award of $20,000 to be awarded to each of the Class Representatives for their service to the Settlement Class.

A full and formal application for Attorneys' Fees and Costs, Administrative Expenses, and Service Awards will be filed with the Court on or before [DATE]. This application will be made available at [www.settlementwebsite.com]. You may also obtain a copy of this application through the Public Access to Court Electronic Records System (PACER) at http://www.pacer.gov, or by appearing in person during regular business hours at the Office of the Clerk of the United States District Court for the District of Nevada, 333 Las Vegas Boulevard South, Las Vegas, NV 89101.

## 1. Why Did I Receive This Settlement Notice?

The Court caused this Notice to be sent to you because our records indicate that you may be a Former Participant Class Member. If you fall within the definition of the Settlement Class, you have a right to know about the Settlement and about all of the options available to you before the Court decides whether to give its final approval to the Settlement. If the Court approves the Settlement, and after any objections and appeals are resolved, the Net Settlement Amount will be allocated among Settlement Class Members according to a Court-approved Plan of Allocation.

## 2. What Is the Class Action About?

In the Class Action, the Class Representatives claim that the Defendants improperly selected and retained the Russell Funds for the Plan, and that it was not prudent or in the best interest of participants for them to do so. The Class Representatives also allege that Russell had a conflict of interest in selecting and retaining these funds or recommending their selection and retention.

The Defendants deny all claims and assert that they have always acted prudently and in the best interests of participants and beneficiaries.

## 3. Why Is There A Settlement?

The Settlement is the product of extensive negotiations between the Class Representatives, Russell, and their counsel. The parties to the Settlement have taken into account the uncertainty, risks, and costs of further litigation and have concluded that it is desirable to settle on the terms and conditions set forth in the Settlement Agreement. The Class Representatives and Class Counsel believe that the Settlement is best for the Settlement Class. Nothing in the Settlement Agreement is an admission or concession on Russell's part of any fault or liability whatsoever. The parties to the Settlement have entered into the Settlement Agreement to avoid the uncertainty, expense, and burden of additional litigation.

## 4. What Does the Settlement Provide?

Under the Settlement, Russell or its insurers will pay $14,800,000 into a Qualified Settlement Fund to resolve the claims of the Settlement Class against Russell. The Net Settlement Amount (after deduction of any Court-approved Attorneys' Fees and Costs, Administrative Expenses, and Service Awards) will be allocated to Settlement Class Members according to a Plan of Allocation to be approved by the Court (as explained further in Question 5 below). Allocations to Participant Class Members who are entitled to a distribution under the Plan of Allocation will be made into their existing accounts in the Plan. Former Participant Settlement Class Members who are entitled to a distribution will receive their distribution via check, except that any Former Participant Class Member whose payment would be less than $20.00 will not receive a payment in any amount.

All Settlement Class Members and anyone claiming through them will fully release Russell and the Released Parties from certain Plaintiffs' Released Claims, as defined in the Settlement Agreement. The Released Parties include Russell and certain related parties as outlined in the Settlement Agreement. The Plaintiffs' Released Claims include any claims against any of the Released Parties with respect to the Plan that were asserted in the Action against Russell or could have been asserted against Russell, including but not limited to those based on: (1) the selection, retention, or monitoring of the Russell Funds in the Plan's investment lineup; (2) the selection, retention, or monitoring of Russell; (3) the performance, fees, and other characteristics of the Russell Funds in the Plan's investment lineup; (4) Russell's performance as a fiduciary to the Plan or the fees charged to the Plan or its participants, or the services provided by Russell to the Plan or its participants; or (5) the restructuring or modification of the Plan's investment lineup. In addition, Plaintiffs' Released Claims also include certain other claims as set forth in the Settlement Agreement.

The Non-Settling Defendants are not Released Parties under the Settlement. However, it is a condition of the Settlement that the Court enter an order barring the Non-Settling Defendants from asserting certain claims against Russell and that any judgment that is later entered against the Non-Settling Defendants in the Action will be subject to a judgment reduction equal to the amount that represents the greater of the Gross Settlement Amount or the proportionate share of fault that the Court attributes to Russell at trial, if any, with respect to any later judgment.

This is only a summary of the Released Parties and Plaintiffs' Released Claims, and is not a binding description of either. The governing releases are found within the Settlement Agreement, which is available at [www.settlementwebsite.com].

## 5. How Much Will My Distribution Be?

The amount, if any, that will be allocated to you will be based upon available records maintained by the Plan's current or former recordkeepers, including available historical recordkeeper data, and any other records or information used in accordance with the Court-approved Plan of Allocation. Calculations regarding individual distributions will be performed by the Settlement Administrator, whose determinations will be final and binding, pursuant to the Court-approved Plan of Allocation.

To receive a distribution from the Net Settlement Amount, you must either be a (1) "Participant Class Member" as described on page 1; (2) a "Former Participant Class Member" as described on pages 1–2; or (3) a Beneficiary or Alternate Payee of a person identified in (1) or (2).

There are approximately XX,XXX Settlement Class Members. The Net Settlement Amount will be divided *pro rata* among Settlement Class Members (and their Beneficiaries and Alternate Payees) based on Settlement Class Members' average quarterly balances in the Plan during the Class Period, as calculated by the Settlement Administrator based on available data and any Court-approved fallback methodology described in the Settlement Agreement. If the dollar amount of the settlement payment to a Former Participant Class Member is calculated by the Settlement Administrator to be less than $20.00, then that Former Participant Class Member's pro-rata share shall be zero for all purposes, and his or her share shall be reallocated among the other Class Members. Class Members whose pro-rata shares are zero will still be bound by their release of claims. A more complete description regarding the details of the Plan of Allocation can be found in Article 5 of the Settlement Agreement, which is available at [www.settlementwebsite.com].

## 6. How Can I Receive My Distribution?

**According to our records, you are a Former Participant Class Member.** If you are a Former Participant Class Member, you will receive your distribution via check, except that if your payment would be less than $20.00, you will not receive a payment in any amount.

## 7. When Will I Receive My Distribution?

The timing of the distribution of the Net Settlement Amount is conditioned on several matters, including the Court's final approval of the Settlement, any approval becoming final and no longer subject to any appeals in any court, and the Settlement Administrator's receipt and validation of information needed to calculate and make distributions. An appeal of the final approval order may take several years. If the Settlement is approved by the Court, there are no appeals, and substantially complete recordkeeper data is timely received and validated, the Settlement distribution likely will occur within approximately four to six months of the Court's Final Approval Order, unless there are unforeseen circumstances. Distribution may take longer if

historical recordkeeper data must be obtained, corrected, reconciled, or supplemented. There will be no payments under the Settlement if the Settlement Agreement is terminated.

## 8. Can I Get Out of The Settlement?

No. The Settlement Class has been certified under Federal Rule of Civil Procedure 23(b)(1). Therefore, as a Settlement Class Member, you are bound by the Settlement (if it receives final Court approval) and any judgments or orders that are entered in the Action. If you wish to object to any part of the Settlement, you may write to Class Counsel and Russell's counsel about why you object to the Settlement, as discussed below.

## 9. Do I Have A Lawyer in The Case?

The Court has appointed the law firm of Nichols Kaster, PLLP in Minneapolis, Minnesota as Class Counsel in the Class Action. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 10. How Will the Lawyers Be Paid?

Class Counsel has not been paid for any of the work they have done to date. The Settlement provides that Class Counsel may apply for an award of Attorneys' Fees not to exceed one-third of the Qualified Settlement Fund, along with Costs and Administrative Expenses, at least 14 days prior to the objection deadline. This motion will be considered at the Fairness Hearing. In addition, Class Counsel will seek Service Awards for the Class Representatives of no more than $20,000 each. The Court will determine the amount of attorneys' fees, costs, administrative expenses, and service awards that will be awarded, if any. All papers filed in this Action, including Class Counsel's motion for Attorneys' Fees and Costs and Administrative Expenses, will be available for review via the Public Access to Court Electronic Records System (PACER), available online at http://www.pacer.gov.

## 11. How Do I Tell the Court If I Don't Like the Settlement?

If you are a Settlement Class Member, you can object to the Settlement by mailing to Class Counsel and to Russell's counsel at the addresses below a written objection explaining why you object and any supporting documents, and your objection will, in turn, be provided to the Court. Your written objection must: (1) clearly identify the case name and number: Wanek v. Russell Investments Trust Company, et al., Case No. 2:21-cv-00961-CDS-BNW; (2) include your full name, current address, and telephone number or email address; (3) describe the position you wish to assert, including the factual and legal grounds for the position; (4) provide copies of all documents that you wish to submit in support of your position; (5) provide the name(s), address(es) and phone number(s) of any attorney(s) representing you; and (6) include your signature. Your written objection and supporting documents must be mailed to Class Counsel and Russell's counsel no later than [deadline set by Court] to be considered. The Court will set a deadline that is at least 21 calendar days before the Fairness Hearing, unless the Court orders otherwise. Class Counsel and Russell will have an opportunity to respond to your objection.

Please note that the Court's Order Granting Preliminary Approval of this Settlement provides that any party to the litigation may, but is not required to, serve discovery requests, including requests for documents and notice of deposition not to exceed two hours in length, on any objector. Any responses to discovery, or any depositions, must be completed within ten days of the request being served to the objector.

| CLASS COUNSEL | RUSSELL'S COUNSEL |
|---|---|
| Brock Specht<br>NICHOLS KASTER, PLLP<br>4700 IDS Center<br>80 South 8th Street<br>Minneapolis, MN 55402 | Sean M. Murphy<br>Robert C. Hora<br>MILBANK LLP<br>55 Hudson Yards<br>New York, NY 10001 |

## 12. When and Where Will the Court Decide Whether to Approve the Settlement?

The Court will hold a Fairness Hearing at [TIME] on [DATE], at the United States District Court for the District of Nevada, 333 Las Vegas Boulevard South, Las Vegas, NV 89101, in Courtroom 6B. At the Fairness Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court also will consider the motion for Attorneys' Fees and Costs, Administrative Expenses, and Service Awards. If there are objections, the Court will consider them then. Please note that if the Fairness Hearing is rescheduled, or if it is held by video conference or telephone, a notice will be posted on the Settlement Website at [www.settlementwebsite.com].

## 13. Do I Have to Attend the Fairness Hearing?

No, but you are welcome to come at your own expense. You may also make an appearance through an attorney. If you send an objection, you do not have to come to the Court to talk about it. As long as you mailed your written objection on time, the Court will consider it.

## 14. May I Speak at The Fairness Hearing?

Yes. If you wish to attend the hearing and speak at the hearing, you must serve Class Counsel and Russell's counsel (as identified on page 8) with a notice of intent to appear by the deadline set by the Court, which will be at least 21 calendar days before the Fairness Hearing, unless the Court orders otherwise. You must also comply with the requirements for making an objection (described above) if you wish to object to the Settlement.

## 15. What Happens If I Do Nothing at All?

**If you are a "Former Participant Class Member" as described on page 1, and you do nothing, you will receive your *pro rata* share of the Net Settlement Amount via check, unless your payment would be less than $20.00, in which case you will not receive a payment in any amount.**

## 16. How Do I Get More Information?

If you have questions regarding the Settlement, you can visit [www.settlementwebsite.com], call [phone number], or write to the Settlement Administrator at [mailing address]. All papers filed in this lawsuit are also available for review via the Public Access to Court Electronic Records System (PACER), at http://www.pacer.gov, and can be reviewed in person during regular business hours at the Office of the Clerk of the United States District Court for the District of Nevada, 333 Las Vegas Boulevard South, Las Vegas, NV 89101. Please note that neither Russell nor any employees, attorneys, or representatives of Russell may advise you regarding the Settlement or how you should proceed.

# EXHIBIT 3

**EXECUTION COPY**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

DANNY WANEK, JUAN DUARTE, AND RICK RUBERTON, as representatives of a class of similarly situated persons, and on behalf of the Caesars Entertainment Corporation Savings & Retirement Plan,

Plaintiffs,

v.

RUSSELL INVESTMENTS TRUST COMPANY, CAESARS HOLDINGS INC., THE PLAN INVESTMENT COMMITTEE, AND THE 401(K) PLAN COMMITTEE

Defendants

Case No. 2:21-cv-00961-CDS-BNW

**[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, APPROVING PROCEDURE AND FORM OF NOTICE, AND SCHEDULING FINAL APPROVAL HEARING**

This matter came before the Court on Plaintiffs' Motion for Preliminary Approval of a proposed class action settlement of the above-captioned action ("Action") between Named Plaintiffs Danny Wanek, Juan Duarte, and Rick Ruberton, on behalf of a class of participants in the Caesars Entertainment Corporation Savings & Retirement Plan ("Plan"), and Russell Investments Trust Company ("Russell"), as set forth in the Parties' Class Action Settlement Agreement ("Settlement Agreement"). Having duly considered the terms of the Settlement Agreement and the motion papers and arguments of counsel, the Court hereby finds and orders as follows:

1. Based on the Court's review, the Court finds, on a preliminary basis, that: (i) the Settlement Agreement is fair, reasonable, and adequate, and within the range of possible approval,

(ii) the Settlement Agreement has been negotiated in good faith at arm's-length between experienced attorneys familiar with the legal and factual issues of this case following substantial discovery, (iii) the form and method of notice of the Settlement Agreement and of the Fairness Hearing is appropriate; and (iv) the Settlement Agreement meets all applicable requirements of law, including Federal Rule of Civil Procedure 23 and applicable Ninth Circuit precedents. Accordingly, the Court preliminarily approves the Settlement Agreement in its entirety.

2. For settlement purposes, the Court preliminarily certifies the following Settlement Class pursuant to Fed. R. Civ. P. 23(b)(1), which is consistent with the Class previously certified by the Court (*see* Doc. 195):

> All participants and beneficiaries of the Caesars Entertainment Corporation Savings & Retirement Plan from August 1, 2017, through December 17, 2021, excluding any employees of Caesars with responsibility for the Plan's investment or administrative functions.

Named Plaintiffs Danny Wanek, Juan Duarte, and Rick Ruberton are appointed as the Class Representatives, and Nichols Kaster, PLLP is appointed as Class Counsel for the Settlement Class.

3. The Court approves the proposed Notices of Settlement (Exhibits 1 and 2 to the Settlement Agreement) and the method of giving direct notice to Settlement Class Members by email, first-class mail, or such other means as provided in the Settlement Agreement and this Order. The Court finds that the proposed Notices fairly and adequately provide information to the Settlement Class regarding, among other things: (1) the nature of the claims asserted in the Action; (2) the scope of the Settlement Class; (3) the terms of the Settlement Agreement; (4) Settlement Class Members' right to object to the Settlement and the deadline for doing so and the rights of the Settling Parties to discovery concerning such objections; (5) the Settlement Class's release; (6) the identity of Class Counsel and the amount of compensation they will seek in connection with

the Settlement; (7) the date, time, and location of the Fairness Hearing; and (8) Settlement Class Members' right to appear at the Fairness Hearing. Pursuant to Rules 23(c)(2) and (e) of the Federal Rules of Civil Procedure, the transmission of these Notices constitutes the best notice practicable under the circumstances and complies fully with the requirements of Federal Rule of Civil Procedure 23, the United States Constitution, due process, and applicable law. Additionally, the Notices provide due and sufficient notice of the Fairness Hearing and of the rights of all Settlement Class Members.

4. No later than forty-five (45) calendar days following the entry of this Preliminary Approval Order, or twenty (20) business days after the Settlement Administrator has received and validated substantially complete notice data, whichever is later, the Settlement Administrator shall transmit the proposed Notices to the Settlement Class by email to the email address on file with the Plan or otherwise available to the Settlement Administrator or, if no email address is available for a Settlement Class Member, by first-class mail, postage prepaid; provided, however, that absent further order of the Court, the Settlement Administrator shall use reasonable efforts to complete the initial dissemination of the Notices no later than ninety (90) calendar days after entry of this Preliminary Approval Order.

5. In accordance with the Settlement Agreement, the Settlement Administrator also shall establish a Settlement Website and toll-free telephone line relating to the Settlement no later than ten (10) calendar days following the entry of this Preliminary Approval Order.

6. Class Counsel shall file the Settlement Administrator's declaration confirming compliance with 28 U.S.C. § 1715 prior to the Fairness Hearing. If later-received recordkeeper data materially changes the states in which Settlement Class Members are understood to reside or otherwise makes supplemental notice reasonably necessary, the Settlement Administrator, on

behalf of Russell, shall use reasonable efforts to provide supplemental CAFA notice as provided in the Settlement Agreement.

7. Pursuant to the Settlement Agreement**,** [name of Settlement Administrator to be inserted] is hereby appointed as the Settlement Administrator and shall be required to perform all the duties of the Settlement Administrator as set forth in the Settlement Agreement and this Order.

8. On [date] at [time] [a date no earlier than one hundred twenty (120) calendar days after the date of the Preliminary Approval Order and no earlier than sixty (60) calendar days after completion of the initial dissemination of the Notices, or the first available hearing date thereafter], or at such other date and time later set by Court Order, in courtroom 6B of the United States District Court for the District of Nevada, 333 Las Vegas Boulevard South, Las Vegas, NV 89101, this Court will hold a Fairness Hearing to: (1) give final consideration to the fairness, reasonableness, and adequacy of the Settlement Agreement, (2) review any comments or objections regarding the Settlement Agreement, (3) consider whether the Court should issue a Final Approval Order approving this Settlement Agreement, (4) consider any proposed Attorneys' Fees and Costs, Administrative Expenses, and Service Award, and (5) consider any other matters that the Court may deem appropriate in connection with the Settlement.

9. Any Settlement Class Member may comment in support of or in opposition to the Settlement Agreement; provided, however, that all comments and objections shall only be considered by the Court at the Fairness Hearing if they have been timely sent to Class Counsel and Russell's Counsel. To be timely, the comment and/or objection and any supporting documents must be mailed or otherwise delivered to Class Counsel and Russell's Counsel no later than twenty-one (21) calendar days prior to the date of the Fairness Hearing, unless the Court orders otherwise. The comment and/or objection also must: (1) clearly identify the case name and number

of this Action; (2) include the Settlement Class Member's full name, current address, and telephone number or email address; (3) describe the position the Settlement Class Member wishes to assert, including the factual and legal grounds for the position; (4) provide copies of all documents that the Settlement Class Member wishes to submit in support of his or her position; (5) provide the name(s), address(es) and phone number(s) of any attorney(s) representing the Settlement Class Member; and (6) include the Settlement Class Member's signature. A Settlement Class Member who submits a comment or objection regarding the Settlement Agreement need not appear at the Fairness Hearing for the Settlement Class Member's comment or objection to be considered by the Court. Any Settlement Class Member wishing to speak at the Fairness Hearing shall serve a notice of intent to appear on Class Counsel and Russell's Counsel by the date set by the Court, which shall be at least twenty-one (21) calendar days prior to the Fairness Hearing, unless the Court orders otherwise. Any Party may file a response to an objection before the Fairness Hearing.

10. Any Settlement Class Member or other person who does not timely serve a written objection complying with the terms of this Order shall be deemed to have waived, and shall be foreclosed from raising, any objection to the Settlement, and any untimely objection shall be barred.

11. Any Settling Party wishing to obtain discovery from any objector may, but is not required to, serve discovery requests, including requests for documents and notice of deposition not to exceed two (2) hours in length, on any objector within ten (10) calendar days of receipt of the objection and that any responses to discovery or depositions must be completed within ten (10) calendar days of the request being served on the objector.

12. Any application for Attorneys' Fees and Costs, Administrative Expenses, or Service Award shall be filed no later than fourteen (14) calendar days prior to the deadline for objections.

13. No later than fourteen (14) calendar days prior to the Fairness Hearing, or by such other deadline as the Court may order, Class Counsel shall file papers in support of Final Approval of the Settlement Agreement. Class Counsel shall file any objections to the Settlement with the motion for Final Approval of the Settlement.

14. Any Settlement Class Member who fails to object in the manner prescribed herein shall be deemed to have waived such Settlement Class Member's objections and shall forever be barred from making any such objections in this Action or in any other action or proceeding.

15. The terms of the Bar Order set forth in the Settlement Agreement are preliminarily approved, subject to final approval of the Settlement Agreement.

16. Each Settlement Class Member, and his or her respective heirs, executors, estates, beneficiaries, administrators, successors, agents, attorneys, and assigns, and the Plan, is preliminarily enjoined from suing Russell or other Released Parties in any action or proceeding alleging any of Plaintiffs' Released Claims, even if any Settlement Class Member may thereafter discover facts in addition to or different from those which the Settlement Class Members or Class Counsel now know or believe to be true with respect to the Action and Plaintiffs' Released Claims. Further, pending final determination of whether the Settlement Agreement should be approved, no Settlement Class Member or the Plan may directly, through representatives, or in any other capacity, commence any action or proceeding in any court or tribunal asserting any of the Plaintiffs' Released Claims against Russell or Released Parties.

17. The Settlement Agreement, the proceedings relating to the approval of the Settlement Agreement, and this Preliminary Approval Order are not and shall not be construed as evidence or an admission of any liability, responsibility, fault, or wrongdoing on the part of the Parties or any Released Party. In the event that the Settlement Agreement is terminated pursuant to its terms or is not finally approved in all material respects by the Court, or such approval is reversed, vacated, or modified in any material respect by this or any other court, then the Parties and Settlement Class Members will be restored to their respective positions immediately before the execution of the Settlement Agreement, this Action shall proceed in all respects as if the Settlement Agreement and any related orders had not been entered, and any order entered by the Court pursuant to the terms of the Settlement Agreement shall be treated as vacated *nunc pro tunc*.

**EXECUTION COPY**

**SO ORDERED.**
This is the ___day of _______, 2026.

BY THE COURT

_________________________________
Honorable Cristina D. Silva
United States District Court Judge